ROY STALEY et al. v. STATE.

No. A-9282. May 20, 1938.

(79 P. 2d 818.)

Walter Henneberry and Edward Crossland, both of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., and Holly L. Anderson, Co. Atty., of Tulsa, for the State.

BAREFOOT, J. The defendants were charged with opening and conducting gambling games in Tulsa county, on the 3rd day of December, 1935, were tried, convicted and sentenced to pay a fine of $1,000 each, and serve a sentence of five years in the penitentiary, and have appealed.

The first four assignments of error are considered together as they involve the same questions of law. It is contended that the information filed fails to charge a public offense, and that the court erred in overruling the demurrer thereto, and in overruling defendant's motion in arrest of judgment.

The statute under which defendants were charged was Oklahoma Stats. 1931, § 2190, Okla. St. Ann., tit. 21, § 941, and was as follows:

"Every person who opens, or causes to be opened, or who conducts, whether for hire or not, or carries on either poker, roulette, craps or any banking or percentage, or any gambling game played with dice, cards or any device, for money, checks, credits, or any representatives of value, or who either as owner or employee, whether for hire or not, deals for those engaged in any such game, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine of not less than $500, nor more than $2,000, and by imprisonment in the state penitentiary for a term of not less than one year nor more than ten years."

The charging part of the information filed under this section of the statute was as follows:

"On the 3rd day of December, 1935, did unlawfully, willfully, knowingly and feloniously, while acting in concert each with the other, opened and caused to be opened and conducted, gambling games, to wit: Roulette, crap games played

with dice, '21' games played with cards and other gambling devices, at the Sheridan Club, where A. B. Anderson, and divers other persons, whose names to the County Attorney, are unknown, played for money, checks, credits and other representatives of value, contrary, etc."

It is contended by defendants that the information "fails to charge that A. B. Anderson and divers other persons played for money, checks, credits, or other representatives of value on any of the games charged to have been opened or conducted by the defendants." To sustain this contention it is urged that "the word 'where' has reference to place and means 'at which place' ". Which place is the Sheridan Club. The state, on the other hand, contends "that the word 'where' signifies the game or games played by A. B. Anderson and signifies the game or games in which the said Anderson played for money, checks, credits or other representatives of value." The brief of the state calls attention to the fact that a comma follows the words "Sheridan Club" and immediately following is the words "Where A. B. Anderson and divers other persons * * * played for money, checks, credits and other representatives of value, etc." Whatever construction may be placed upon the statute and the wording of the information, the contention of the defendants is highly technical. The courts of this state have never been favorable to such technical construction of the statutes and informations and indictments filed thereunder. The charging part of the information is in practically the words of the statute, and is certainly sufficient to inform the defendants of the nature of the charge made against them. It is the opening of the gambling house, and the permitting of gambling by means of certain devices, which are played for money, checks, credits and other representatives of value, which the state statute intends to prohibit. All of these elements are charged in the information in fairly clear concise language and are sufficient in our opinion as against the demurrer filed in this case.

The case of Leach v. State, 17 Okla. Cr. 322, 188 P. 118, gives a complete history of the gambling statutes of this state and upholds the constitutionality of the Act of 1916, under which defendants were prosecuted. It is useless for us to reproduce the same.

We have examined the case of Brown v. State, 5 Okla. Cr. 41, 113 P. 219, cited by defendant. This information was filed under a different statute from the one now in effect. In that case the information did not charge the party who was playing the game to have played for money or representatives of value. In the instant case the information charges that "A. B. Anderson and divers other persons * * * played for money * * *, etc."

The case of Johnson v. State, 10 Okla. Cr. 597, 140 P. 622, overrules the case of Brown v. State, supra, and the same judge who wrote the opinion in the Brown Case, says (page 625) :

"For the benefit of the prosecuting attorneys and the people of the state as well, we may say that any person interested directly or indirectly in conducting a gambling game in Oklahoma, whether as owner, or whether as employe, or whether as a matter of accommodation, either for hire or without hire, is subject to indictment and conviction under the statute supra. An information charging such offense or offenses might well be drawn in the language of the information here under consideration, and proof that such game was conducted as alleged will be sufficient to sustain a conviction.

"We have not overlooked the fact that there are authorities which sustain a more strict construction, but in Oklahoma the statute law requires a liberal construction as against a strict construction. * * *"

However, it will be noted that this statute has now been amended as shown by the sections of the statute above quoted.

Five assignments of error are next urged by defendants and considered together. They are that the verdict of the

jury is contrary to the evidence and contrary to law. Under this contention it is maintained that the evidence did not show that the gambling games were open and conducted "for money, checks, credits or other representatives of value", and that the evidence was insufficient to sustain the conviction. The evidence disclosed the following facts:

George Collins and T. Van Woody testified that they were investigators for the state of Oklahoma; that as such officers they secured a search warrant, and in company with Jack Bonham, an investigator from the county attorney's office, searched the Sheridan Club, near Tulsa, on the morning of December 4, 1935; they found there decks of cards, a bushel or two of poker chips, tables, poker tables, crap tables, chuck-a-luck game, a wire basket which you turned, a lot of dice, a roulette wheel, and different kinds of tools to work on dice, and "just about everything you would find in an up to date modern gambling hall", also papers in the office where "they had been figuring the different cuts and splits."

George Pickford testified that he was a colored porter at the Sheridan Club; that he was employed by Roy Staley, one of the defendants, and received $7 per week, which was paid him in cash; that he had seen the defendants Cecil Byrd and George L. McCullough just working around seeing that everything was going all right; had seen Cecil Byrd dealing the cards and had seen Mr. McCullough in his private office; that Mr. McCullough had ordered him to move the gambling tables on the night of December 3, 1935, and with the assistance of others he did so; that he took orders from all of the defendants.

A. B. Anderson testified that he was in the kodak finishing business in Tulsa; that he visited the Sheridan Club on the night of the 3d of December, 1935; that he bought roulette wheel chips, paying cash for them, and played at the roulette wheel; that he saw the defendants, McCullough and Byrd, there that night, and Cecil Byrd was what you call

the cashier at the dice table; that the chips which he had were cashed by someone whom he did not know.

Harry Deweese testified that he was working for the police department; that he was employed as "bouncer" at the Sheridan Club from April 20, 1935, to September 4, 1935; that he was employed by Ned Vandeventer and paid $5 a night; that he knew the defendant McCullough and that he took care of the gambling casino; that he saw the defendant, Cecil Byrd, dealing dice; saw the defendant, A. E. Vandeventer, dealing and working at the stick at the dice or crap table; that the defendant, Roy Staley, took care of the kitchen and dining room; that he had seen bets as high as $100 a throw; that defendant, George L. McCullough, had an office and was the boss; that he took orders from all of the defendants, and was paid by all of them at different times; that when playing was over for the night the four defendants would go into the office of George L. McCullough for the purpose of having a conference and settlement of the day's business, and that he would remain outside and wait and would return with them to Tulsa.

C. J. Harry testified that he was an official court reporter for Tulsa county; that he reported the case of State v. Tyree Parks, which was tried in the district court on January 29, 1936, on the charge of murder; that at the trial George L. McCullough was called as a witness by the defendant and that he took down in shorthand his evidence, and he was permitted to read the evidence given by the defendants at that trial. This evidence showed that George L. McCullough was interested in the Sheridan Club on the 3rd day of December, 1935; that he owned one-seventh interest in the profits; that he had been interested to this extent for a period of about six or seven months. This witness also testified that the defendant Roy Staley testified in this case that he was interested in the operation of the Sheridan Club near Tulsa on December 3, 1935; that he leased the club on the 26th of March, 1935; that the lease was taken in his name

and he managed the club and had a four-sevenths interest therein; that the defendant, Cecil Byrd, testified in the case that he had been connected with the Sheridan Club about seven months and that his duties were "looking after the gambling, or helping look after it"; that he received 15 per cent of the profits and this applied to the sale of food and gambling both; that the defendants Staley, McCullough and Vandeventer were associated with him in the business; that in addition to the fifteen per cent of the profits which he received, he also received $10 per day for his services.

Carey S. Cowart testified that he was an official court reporter for Tulsa county; that he reported the case of State of Oklahoma v. Cecil Byrd, which was tried on March 10, 1936. His testimony was similar to the testimony of the witness C. J. Harry, as to the testimony of some of the defendants. He read the testimony of George L. McCullough in which he stated that he owned a one-seventh interest in the Sheridan Club on December 3, 1935.

S. C. Edmister testified to being a lawyer and drawing a lease which was introduced in evidence, and that the defendant, Roy Staley, leased the property on which the Sheridan Club was located for one year from March 29, 1935.

Marvin Overstreet testified that he was employed at the Sheridan Club to watch cars; that he was employed by defendant, Roy Staley, and paid $2 per night.

Harry Andrews testified that he received $5 per day; that he was employed by Roy Staley but was paid by different ones, including the defendants, George L. McCullough, Cecil Byrd, and A. E. Vandeventer; that he had seen gambling being conducted in said club; that after the raid on December 4, 1935, he was employed by the defendant A. E. Vandeventer to go back out there and go to work.

J. L. Burkhead testified that he was employed by Roy Staley to work at the front door of the Sheridan Club; that it was his duty to keep out "drunks and undesirables" and

to handle the spot light for the floor show; that he was paid at different times by defendants McCullough, Byrd, and Staley.

Michael O'Coole testified that he was employed as director of the orchestra at the Sheridan Club and the orchestra received from $250 to $300 per week; that he saw gambling games being conducted there while he was there.

Harry Deweese was recalled and testified that Mr. A. E. Vanderventer was working there at the crap table and explained the method of conducting gambling games and how they were operated at the Sheridan Club.

The defendants offered no evidence. A mere statement of the above evidence is a sufficient answer to the contention that the judgment is not supported by the evidence. It shows conclusively that defendants were the owners and operators of the Sheridan Club in Tulsa county, and that gambling games of different character had been opened and operated by defendants for a period of seven or eight months; that the profits had been split by the defendants; that many people gathered there for the purpose of gambling in violation of the law.

A. B. Anderson testified directly to having paid for the checks which he bought for the purpose of gambling, and that when he departed the same were cashed by someone whom he did not know. This evidence, together with the other evidence in this case, is sufficient to show that gambling was being conducted "for money, checks, credits and other representatives of value". The evidence of the court reporters was objected to by the defendants. The court sustained this objection as to each defendant only permitting it to be introduced as against the defendant who had given the evidence. Counsel then objected to the evidence as against that defendant for the reason that the notes had not been transcribed by the court reporter. We do not think there is any merit in this contention. The court reporter

was the official reporter for the district court, and read the questions and answers asked from the shorthand notes which he had taken at the time of the trial. It will be noted that the evidence by each of the defendants was in a case where they were not defendants, and were not on trial, with the exception of the defendant, Cecil Byrd. Their evidence was voluntary, and they were placed upon the stand by the defendants and not by the state. If these defendants had refused to testify upon the grounds that evidence which they would give might tend to incriminate them, and had claimed their constitutional or statutory rights, and had then been forced to testify, over their objection and exception, there might be some merit in their contention. The general rule undoubtedly is that if a defendant has voluntarily testified in some other proceeding, such testimony may be used against him as an admission, in a criminal case. Anderson v. State, 8 Okla. Cr. 90, 126 P. 840, Ann. Cas. 1914C, 314; Martin v. State, 46 Okla. Cr. 411, 287 P. 424, 85 A.L.R. 512; Czarlinsky v. U. S., 10 Cir., 54 F. 2d 889; State v. McPherson, 77 Ore. 151, 149 P. 1021; State v. Rathie, 101 Ore. 339, 199 P. 169, 200 P. 790.

Counsel for defendants next assigns four errors, and in his brief says:

"These assignments of error can be treated as one for the sake of argument, in view of the fact that they are so closely associated and aligned that the same argument applies to each."

Under these assignments of error, it is contended that the court erred in refusing to permit the defendants to have a jury trial, and the trying of defendants without the empaneling of a jury. The facts are that defendants were jointly informed against on the 29th day of December, 1935; they were arraigned on the 3rd day of January, 1936, and entered their pleas of not guilty. On the 21st day of February, 1936, the case was by order of the court set for trial on March 11, 1936. It was then stricken from the assign-

ment on several different occasions, and finally set for trial on the 2d day of May, 1936. On this date an agreement was entered into in open court by the state, who was represented by the county attorney and the Assistant Attorney General, and the defendants in person and their counsel, whereby each of said defendants, in consideration of the continuing of said case to September 15, 1936, agreed to waive their right of severance, and also waive their right to trial by jury, and agreed that their case might be tried by the court without the intervention of a jury. This agreement was entered on the minutes of the court by the judge then presiding, and each of the defendants was asked in person if he waived these rights and he answered "yes". On the 10th day of September, 1936, the case was set for trial on the 23d day of September, 1936. On the 22d day of September, 1936, counsel who had represented defendants were permitted to withdraw as counsel. On the 23d day of September, 1936, an order was entered setting the case for trial on the following day, September 24, 1936. On this date defendants, by other attorneys who had been retained by them, filed a demurrer to the information which was overruled, and the defendants then entered pleas of not guilty, and demanded a severance, and on same date filed a written demand for a jury trial. On the same date attorneys representing defendants filed an affidavit asking for a continuance of the case for one week, stating that they had been employed after 9 p.m., September 22, 1936, when other attorneys, who had theretofore represented defendants, had been permitted to withdraw, and that they had not had an opportunity to prepare the case for trial, and interrogate the 31 witnesses endorsed on the information. This motion was by the court overruled and the defendants excepted. Attorneys for defendants then presented an application asking that they be permitted to withdraw the waivers which had theretofore been filed, and that they be permitted to have a jury trial. This application set up the fact that a jury was in attendance on the court, and the granting of this request "would not

prejudice the state or delay or impede the cause of justice, if they should be allowed to withdraw the waivers theretofore filed by them at a former term of court". This motion was overruled by the court, to which defendants excepted, and they were placed on trial before a regular judge of the Tulsa county district court, but one different than the one before whom they had entered their waivers.

It is strongly contended by the defendants that the court erred in overruling the motion for continuance for one week, and refusing the application for permission to withdraw the waivers, and forcing them to trial before the court without the intervention of a jury. With reference to the continuing the case, under the decisions of this court, that was a matter which was in the judicial discretion of the court, and unless it is shown that there was an abuse of this discretion, this court will not interfere with the decision of the trial court. Under the facts presented, we cannot say there was an abuse of this discretion. The case had been continued on several different occasions. The state could not be held responsible for the withdrawal of defendants' counsel the day before their case was called for trial. It would be setting a dangerous precedent to say that this was a cause for continuance as a matter of law. The court was present and knew the surrounding circumstances and was in a better position to pass upon this question than an appellate court. We do not find that the court erred in overruling the motion for continuance.

The question of the court in refusing to permit the withdrawal of the waiver of trial by jury, and granting the defendants a jury trial under the circumstances as revealed by the record in this case presents a more serious question. Defendants, in support of their contention, cite the following cases: Morrison v. State, 31 Okla. Cr. 11, 236 P. 901; Campbell v. Powell, 76 Okla. 286, 185 P. 328; Sharrock v. Kreiger, 6 Ind. T. 466, 98 S.W. 161, 165; Cain v. State, 102 Ga. 610, 29 S.E. 426; People v. Molinet, 13 Misc. 301, 34 N.Y.S. 1114;

Cross v. State, 78 Ala. 430; People v. Standish, 185 Ill. App. 485; State v. Touchet, 33 La. Ann. 1154; Dean v. Sweeney, 51 Tex. 242. The state cites the following authorities: 35 C.J. p. 222, § 140, p. 201, § 111, p. 223, § 141; Logan v. State, 86 Ga. 266, 12 S.E. 406; McClellan v. State, 118 Ala. 122, 23 So. 732; State v. Bannock, 53 Minn. 419, 55 N.W. 558; Edwards v. State, 45 N.J.L. 419; Lanahan v. Heaver, 77 Md. 605, 26 A. 866, 20 L.R.A. 759; Boslow v. Shenberger, 52 Neb. 164, 71 N.W. 1012, 66 Am. St. Rep. 487; Trainor v. Heath, 67 N.H. 384, 29 A. 846; Heacock v. Lubukee, 108 Ill. 641; Hawes v. Clark, 84 Cal. 272, 24 P. 116.

We have examined all of the above authorities, and many more not cited. At first blush it seems there is a direct conflict in the authorities presented, and to a certain extent this is true. It will be noted that part of the cases are based upon crimes which are known as misdemeanors and some upon felonies, but the courts do not generally draw a distinction as to whether one is on trial for a misdemeanor or felony. Many of the cases are based upon municipal statutes or from courts that have been especially created, and almost all of the cases are based upon provisions of the Constitution or statute which have special local application. For this reason many of them do not apply when read in connection with the provisions of our statute and Constitution. Prior to statehood and the adoption of the Constitution of this state, the Territorial Supreme Court passed directly upon this question in the case of In re McQuown, 19 Okla. 347, 91 P. 689, 11 L.R.A., N.S., 1136. Chief Justice Burford, in a very interesting and elaborate opinion, goes into the history of the right to waive a trial by jury by a defendant, and comes to the conclusion that under the statutes in force in Oklahoma prior to statehood, that one who is charged with a crime triable by a jury at common law is required by statute to be tried by a jury, and cannot waive such right, and that a judgment rendered on a plea of not guilty without the intervention of a jury is void. Since this decision was rendered the Oklahoma Constitution has been adopted, and

among its provisions is the following, article 7, § 20, Okla. St. Ann. Const. art. 7, § 20:

"In all issues of fact joined in any court, all parties may waive the right to have the same determined by jury; in which case the finding of the judge, upon the facts, shall have the force and effect of a verdict by jury."

In the case of Cowden v. State, 5 Okla. Cr. 71, 113 P. 202, this court has held that the above constitutional provision is self-executing and applies to criminal cases as well as civil cases, and where the defendant waives a trial by jury, the state consenting, all questions of fact are for the court, and the court is authorized to try the question of the guilt of the accused on a plea of not guilty. This case has been followed in the subsequent decisions of this court. In re Opinion of the Judges, 6 Okla. Cr. 18, 115 P. 1028; In re Wilkins, 7 Okla. Cr. 422, 115 P. 1118; Wise v. State, 28 Okla. Cr. 324, 230 P. 930; Morrison v. State, 31 Okla. Cr. 11, 236 P. 901; Ex parte King, 42 Okla. Cr. 46, 274 P. 682.

Did the court err in refusing defendants the right to withdraw their former waiver and request that they have the right of a jury trial, after a demurrer which they had filed had been overruled, and did the court abuse its discretion in refusing a jury trial under the facts in this case? In the first place, the record nowhere discloses that permission was given to defendants to withdraw their plea of not guilty and file a demurrer to the information. It simply shows the filing of the demurrer to the information and the overruling of the same. If the court did orally grant such permission, it was evidently for the purpose of permitting counsel to save the record and with no intention of permitting a withdrawal of the former agreement to waive a severance and to waive a jury. We do not think as a matter of law this action of the court would be such an action that would set aside the waiver heretofore made by the state and the defendants. By the terms of the agreement both the state and the defendants obtained valuable rights. The defendants were granted a continuance from May 2, 1936 to September

24, 1936, which was a valuable right. The state was saved the expense of trying five separate cases, and the expense of a jury trial. After a careful review of the authorities, we are of the opinion that the defendants had the right to waive a severance and the right to a jury trial, and that by filing a demurrer they were not entitled as a matter of law to have the agreement, which had theretofore been made in open court, set aside. But the record in this case reveals that a jury was in attendance on the court and had been for the last ten days, and that if the jury had been permitted to sit in this case there would have been no delay, and they would have been permitted to pass not only upon the guilt or innocence of the defendants, but would have had the right to assess the punishment, and in this instance, while defendants may not have been entitled to a jury trial as a matter of law, the state would not have been prejudiced or delayed or the cause of justice impeded. Under the circumstances as revealed by the record we think it would have been much better for the court to have exercised its discretion in favor of the defendants and permitted the jury to pass upon their guilt or innocence and assess the punishment. This discretion should be more zealously guarded in a criminal case than in a civil case. We, however, do not hold as a matter of law that they had this right. The evidence in this case shows that the defendants were conducting a gambling house in violation of the laws of this state. It does not show that defendants have ever had any prior convictions. Under the circumstances it is our opinion that substantial justice will be done, both to the state and to the defendants, instead of reversing this case, to modify the judgment from a fine of $1,000 and five years in the penitentiary, to a fine of $1,000 and two years in the penitentiary.

As thus modified, the judgment of the district court of Tulsa county is affirmed.

DOYLE, J., concurs. DAVENPORT, P. J., absent and not participating.