THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ABRAHAM VALENTÍN HERNÁNDEZ, Defendant and Appellant.

No. 7934. Argued January 17, 1940.—Decided January 25, 1940.

*Abraham Valentín Hernández, pro se. R. A. Gómez, Prosecuting Attorney,* for The People, appellee.

Mr. Justice De Jesús delivered the opinion of the Court.

In a trial by the court held originally before the District Court of Mayagüez the defendant was convicted and sentenced to one year in jail for libel. The information in this case reads as follows:

"The district attorney files this information against Abraham Valentín Hernández for the crime of defamatory libel (misdemeanor) committed in the following manner:

"The said defendant, Abraham Valentín Hernández, on or about March 20, 1938, in Mayagüez, Puerto Rico, which forms a part of the Judicial District of Mayagüez, Puerto Rico, illegally, falsely and maliciously, wrote, composed and published and permitted to be published in 'El Nacionalista', a weekly newspaper published in Mayagüez and of general circulation in the Judicial District of Mayagüez, P. R., and concerning Blanton Winship, who was then and there the Governor of the Island of Puerto Rico, a certain false and malicious article containing words and sentences concerning said Blanton Winship, Governor of Puerto Rico, to wit:

" 'The Misdeeds of a Governor.

" 'There can be no peace in Puerto Rico while the intervention exists. There will be no peace in Puerto Rico until the United States be more respectful towards the Puerto Rican sovereignty and much less will peace exist in Puerto Rico, while Don Blanton, the pirate, stains with his presence the position occupied for hundreds of years by decent people in whom respect for others was inherent.

" 'He has known how to make a lot of corrals where he keeps at his bidding a good number of slaves of whom even the little innocent swine which are.bred by our *jíbaros* and which are daily sacrified to satisfy the appetite of many people of our Island are ashamed, and also a good number of "native swine" who for some time have been under the custody and protection of their great father, protector and tamer, Blanton Winship.

" 'These baby swine of the burocrat of Santa Catalina made one of their first demonstrations on or about October 24, 1935, when fed up on the fact that there still existed valor and dignity in our people, they proposed to, and through the intervention of their well disciplined swine, used the halls of our university to declare *"non grato"* Dr. Pedro Albizu Campos; he did this as the result of his capital brutality and only through the spirit of a beast, ignoring that America had already consecrated Albizu as one of its most illustrious sons; he did this against Albizu Campos because he ignored that the well known Vasconcelos, in a conversation of an hour that he had with Albizu, he himself (Vasconcelos), stated that he learned more than during the years that he spent in universities; he did this because he ignored that Juan Marinello, whom perhaps Don Blanton, does not even dare look in the face has said of Albizu what none of his disciplined baby swine has said of Blanton Winship; he did this because he ignored that all the people who have amounted to something in our America, had consecrated the man, more than as just a common graduate, as a genius; finally he did this because he is not a Puerto Rican and it is not to his purpose that he being "the owner" through the teachings of the great Albizu his servants should learn exactly of his dissipations and misdeeds and as a result charge him as I am charging him since the massacre of March 21, 1937; with being a bandit and a true assassin.

" 'Yes indeed, it was on October 24, 1935, the date chosen by the big chief of Santa Catalina to begin, or that is, to put the first stone to the building of his great misdeeds and as he knew that the student body itself was going to place a halt on what he had ordered, he made use of his swine herd in blue uniforms to assassinate five helpless and pacific Puerto Ricans cramped into an automobile; but of those five, four had to be nationalists so that a pretext should exist; they were nationalists and according to the defense of the monster of Santa Catalina they were going to kill a few of his tamed swine; no other automobile should be searched and its passengers shot; the order of Don Blanton is: "Kill everyone who does not submit to your will."

" 'And with this as his first movement and together with Riggs, he was credited with his first victory. HIS FIRST ACT AS A KILLER.

" 'Ramón S. Pagán, Eduardo Rodríguez Vega, Pedro Quiñones, José Santiago Barea and Muñoz Jiménez. (Sgd.) Abraham Valentín Hernández, Mayagüez, P. R., March 20, 1938.'

"Said article and said newspaper is attached to this information as a part of the same and is marked Exhibit 'A'.

"All said statements contained in said article made and concerning Blanton Winship, are false, voluntary and malicious and said Abraham Valentín Hernández knew at the time that he wrote, composed and published said article or publication, that all the aforesaid statements made about and concerning said Blanton Winship and contained in said article or publication are false and malicious, but said Abraham Valentín Hernández composed, wrote and published said article or publication containing the aforesaid statements about and concerning Blanton Winship, Governor of Puerto Rico, for the purpose of charging him with being a bandit and with being a real killer and with being responsible for the massacre of March 21, 1937, and as an *innuendo* it is alleged that the massacre of March 21, 1937, to which said article refers, has to do with the seventeen deaths occurred in Ponce on March 21, 1937, in a clash between the police and a number of citizens in a certain riot which occurred on that city on that date; said publication and statements concerning said Blanton Winship, Governor of Puerto Rico, were written, composed, published and circulated with a perverted and malicious intent and in order to prejudice his good name and reputation as a public employee and Governor of Puerto Rico and as a citizen of this community and to expose him to suspicion, hate and public contempt and the loss of his reputation.

"All these being contrary to the law made and provided for such case and against the peace and dignity of The People of Puerto Rico."

The defendant has not filed a brief to sustain the appeal and consequently has not presented the assignment of errors required by the rules of this Court. He has only presented a petition requesting a new trial because he was denied by the court *a quo* the right which he alleges to have to a trial by jury.

██ As appears from the record when this case was called for trial and when the parties were asked if they were ready for trial, the defendant addressing the court, stated as follows:

"Defendant: In this case a trial by the court was asked for because Eudaldo Báez García was my attorney but as he refuses to

defend me I have decided to defend myself but I make one request of the court, that it give me sufficient time to be tried by a jury.

"District Attorney: The district attorney objects. The district attorney understands that the defendant waived his right to a trial by jury in the arraignment and he now asks to be tried by jury when the witnesses have already been summoned for this case.

"Judge: In this case, the information was read to you on June 30, 1938. You, the defendant, through your attorney, Eudaldo Báez García requested a term of sixty days to answer the complaint and the court, taking into consideration that on July 1, next the court began its vacation, granted you a benefit to which you had no right, giving you sixty days to answer the information. Sixty-two days later, that is, Friday, December 2, 1938, you and your attorney appeared, pleaded not guilty and requested a trial by the court and the court ordered that the case be set for trial. The case was set for November 14, 1938, and as the district attorney received an order from the Attorney General of Puerto Rico to immediately go and make an investigation of the Banco de Economías y Préstamos de San Germán, the case was continued and was then set for today. The court is of the opinion that although in a case of libel, the defendant has a right to a jury trial, the defendant had a splendid opportunity during sixty-two days to answer the information and request a jury trial. And he had approximately another sixty days from November 14, when his case was set for trial and then postponed till today. Witnesses have been summoned for The People of Puerto Rico and there are expenses because some of the witnesses are from San Juan and the district attorney has objected, because if this case were continued to be tried by jury, perhaps on the day of the trial you might waive your jury trial, and this would hinder the ends of justice. Therefore, the petition of the defendant is denied.

"(To the defendant) Do you have any other allegation to make to the Court? If the defendant wishes, the court may appoint a lawyer to represent him at the hearing of the case.

"Defendant. In that case, I waive my right to have a lawyer appointed.

"Judge: Then, Clerk, read him the information." (T. of E. 2–4.)

Did the court *a quo* err in not awarding appellant a trial by jury after he had waived that right? The general rule

in the United States is to the effect that courts of first instance have ample discretion to award or deny a trial by jury after the defendant has waived that right. 16 R.C.L. 218. In Puerto Rico this subject is regulated by Section 178 of the Code of Criminal Procedure, which states as follows:

"Issues of fact in cases of felony and in cases of misdemeanor, when the information was originally filed in the District Court and the municipal courts also had jurisdiction of the same, shall be tried by jury if the accused or any one of them so elect and such election must be made before the court at the first reading of the docket in which the case appears. If such election be made it shall be entered on the record and if it be not made that fact shall be stated in the record, in which case it shall be considered that the right to be tried by jury has been waived and the case shall be tried by the court. However, *if good reasons are shown,* the court may grant a trial by jury at any time after the calling of the docket." (Italics supplied.)

As a matter of fact, the district courts do not read the docket of criminal cases. It is at the arraignment that the defendant elects or waives the jury trial and this was the proceeding followed in the present case. According to the provisions copied above, if after having waived a trial by jury or after the time for requesting said right has passed, the defendant shows the court that there are good reasons to award him a jury trial, the court *may* at any moment after arraignment, exercise its discretion in favor of the defendant. Did the court *a quo* abuse its discretion in denying the petition of the defendant? From the part of the record copied, it appears that it was not until the very moment of the beginning of the trial that the defendant made his petition. If it had been acceded to, it would have been necessary to suspend the trial, since it does not appear from the record that there was a jury called for that day and a continuance under such conditions would not only cause a delay in the administration of justice but also would cause the expenses of a continuance and summons for a new trial.

In the case of *Staley* v. *State*, 79 P. (2d) 818, decided by the Court of Criminal Appeals of Oklahoma on May 20, 1938, it was held that a defendant does not have a right to a trial by jury once he has waived it and although in that case no prejudice would have been caused the State because there was a jury in the court who could have heard the case immediately, nevertheless, the fact that the court did not exercise its discretion in favor of the defendant, did not constitute error because as a matter of right he could not demand a jury trial once he had waived it.

In the case of *State* v. *Bannock*, 53 Minn. 419, 421, 55 N. W. 558, the question is discussed in the following manner:

"The right of trial by jury having been voluntarily relinquished, the accused had no power to revoke his waiver, and demand a trial by jury. It would be a self-contradiction to say that the right, once expressly and effectually waived by the defendant, could be recalled at his mere will. The right to thus revoke is inconsistent with the essential nature of a waiver."

It is clear therefore that the lower court did not commit any error in exercising its discretion in this case and in not continuing the hearing to give the accused a trial by jury which he had previously effectively and expressly waived.

The information of this case is examined and from it it appears clearly that a crime of libel is alleged. From the evidence which we also have examined it appears that the libelous matter was published. This being so, there was no fundamental error committed which would justify the reversal of the judgment or the concession of a new trial which the accused requests. Therefore, the judgment appealed from must be affirmed.