2008 OK CR 7

**Wade Greely LAY, Appellant**

v.

**STATE of Oklahoma, Appellee.**

**No. D–2005–1081.**

Court of Criminal Appeals of Oklahoma.

Feb. 12, 2008.

---

Wade Greely Lay, McAlester, OK, pro se, at trial.

Doug Drummond, William Musseman, Assistant District Attorneys, Tulsa County District Attorney's Office, Tulsa, OK, Attorneys for the State at trial.

Stephen J. Greubel, Tulsa County Public Defender's Office, Tulsa, OK, Attorneys for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee on appeal.

## *OPINION*

CHAPEL, Judge.

¶1 In Tulsa County District Court Case No. CF–2004–2320, Wade Greely Lay was tried by jury and convicted of Count I: First Degree Murder in violation of 21 O.S.2001, § 701.7, and Count II: Attempted Robbery with a Firearm in violation of 21 O.S.2001, § 701.7. At sentencing, the jury found three aggravating circumstances: (1) that the defendant knowingly created a great risk of death to more than one person; (2) that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (3) that a probability existed that the defendant constituted a continuing threat to society. The jury set punishment of death for Count I and twenty-five (25) years' imprisonment for Count II. The Honorable Tom C. Gillert followed the jury's sentencing recommendation. Lay has per-

fected his appeal of these convictions and sentences.[1]

¶ 2 The facts in this case are largely undisputed. Lay does not challenge his convictions but only the sentences he received for them. On May 24, 2004, Wade Lay and his son, Chris, entered the MidFirst bank in Tulsa to rob the bank to fund the purchase of guns to avenge the United States Government's attacks on Ruby Ridge and the Branch Davidians. The Lays believed that the United States Government had become tyrannical and that they had to start a patriotic revolution as was done by America's founding fathers.

¶ 3 The Lays entered the bank armed, wearing ski masks and gloves. Christopher Lay confronted bank employee Brian Easlon and ordered him to the ground. When bank security guard Kenneth Anderson entered the lobby, a gun battle erupted wounding the Lays and killing Anderson. The Lays, without obtaining any money, fled across a field to their truck. Both were apprehended later that day and were taken to the hospital. At trial, both Lays admitted guilt but asserted that their actions were driven by a necessity for the greater good of the country.

¶ 4 In Propositions I–III of his brief, Wade Lay argues: (1) that he had no constitutional right to *pro se* representation in the penalty phase of a capital trial and that the trial court erred in allowing him to represent himself; (2) that if a defendant can represent himself in the penalty phase of a capital trial, the Constitution requires the trial court to appoint second chair/standby counsel to assist; (3) that the trial court abused its discretion in failing to grant Lay's request for second chair/standby counsel; and (4) that

Lay's waiver of counsel was inadequate for the penalty phase of his trial.

¶ 5 Lay initially claims that he had no right to self-representation in the penalty phase of a capital trial and that it was error for the trial court to allow him to represent himself in the penalty phase. Specifically, he argues that the increased scrutiny demanded by the Eighth Amendment to the U.S. Constitution in a capital trial overrides a defendant's right to self-representation. Notwithstanding Lay's assertions, the right of self-representation is not limited based upon the type of trial,[2] and the law allows a competent defendant to waive any right to counsel during any phase of a capital trial.[3] We agree with the Seventh Circuit's assessment:

> The [United States Supreme] Court in *Faretta* did not impose any restrictions upon a defendant's right to refuse assistance of counsel except to state that the right must be "knowingly and intelligently" waived. Moreover, we can think of no principled reason to deny a death-eligible defendant his *Faretta* right to proceed without the assistance of counsel. If an individual in a capital sentencing hearing wishes to proceed *pro se*, *Faretta* grants him the right to do so.[4]

¶ 6 Lay does not challenge the constitutionality of *pro se* representation at the guilt/innocence stage of his trial which is as important-if not more so-than the penalty stage. If a defendant is acquitted or convicted of a lesser crime, the death penalty is no longer a sentencing option. Regardless, we hold that a criminal defendant may represent himself at **all** phases of a capital trial: guilt/innocence and sentencing.

1. Wade Lay's co-defendant—his son, Chris Lay, appealed and his sentence for life imprisonment without the possibility of parole for First Degree Murder was affirmed in an unpublished opinion on August 2, 2006.

2. *U.S. v. Davis*, 285 F.3d 378 (5th Cir.2002)(right to self-representation includes penalty phase of capital case; reversing case after lawyer appointed over defendant's objection).

3. *Faretta v. California*, 422 U.S. 806, 833–34, 95 S.Ct. 2525, 2540–41, 45 L.Ed.2d 562 (1975) (de-

fendant entitled to self-representation at trial and may waive right to counsel); *see Hooper v. State*, 2006 OK CR 35, 142 P.3d 463, *cert. denied*, —— U.S. ——, 127 S.Ct. 1883, 167 L.Ed.2d 370 (2007) (defendant allowed to waive constitutional rights and volunteer for death penalty); *King v. State*, 1976 OK CR 103, 553 P.2d 529 (allowing waiver of all constitutional rights at guilty plea).

4. *Silagy v. Peters*, 905 F.2d 986, 1007 (7th Cir. 1990).

¶ 7 Lay next argues a defendant who represents himself in the penalty phase of a capital trial must be granted the assistance of qualified standby counsel. Lay again premises his point on the claim that the penalty phase of a capital trial requires additional protection based upon the Eighth Amendment. We have previously urged trial courts to appoint standby counsel to advise the defendant and maintain orderly proceedings when a defendant desires to represent herself/himself.[5] Although trial courts should appoint standby counsel in any case where a defendant desires self-representation, at the time of Lay's trial, it was not required in any case, including the sentencing phase of a capital trial.[6]

¶ 8 Given that appointment of standby counsel was not required at the time of Lay's trial, we find that the district court did not abuse its discretion when it denied his request for a second chair or standby counsel at trial. Additionally, when Lay waived his right to representation, he knew he would not have standby counsel in the courtroom to assist him at the hearings or trial, as the trial court informed Lay that standby counsel would be available if needed but not in the courtroom. The trial court further advised Lay that if he decided not to represent himself, counsel would be appointed for him. Armed with this knowledge, Lay made his choice.

¶ 9 Even though it was not then, and is not now required by either the state or federal Constitution, given the magnitude of a capital trial and its consequences, we are of the opinion that the trial court should have required standby counsel to be present at trial to assist Lay with his self-representation at all phases of the trial. In the future, we require that the trial court appoint standby counsel in all capital cases where an indigent defendant is representing himself/herself. Moreover, such standby counsel shall be present at all court proceedings to assist the defendant in self-representation but allow the defendant to maintain control of the case.

¶ 10 Finally, Lay contends in Proposition III that his waiver of counsel for the sentencing phase of his trial was inadequate. Lay does not challenge the validity of his waiver for the guilt/innocence phase of his trial. In fact, Lay commends the district court for doing an "admirable job" in securing Lay's waiver that stage. "All that is required for an effective election for self-representation is that the defendant have full knowledge or adequate warning concerning this right and a clear intent to exercise it."[7] This is so the record will establish "that 'he knows what he is doing and his choice is made with eyes wide open.'"[8]

¶ 11 Here, Lay's waiver of counsel was valid for the entire trial, including the sentencing phase. He was informed of his right to counsel and the dangers of self-representation. He was also informed that he would not have a second chair or standby counsel in the courtroom. He was strongly discouraged from representing himself. Although Lay was made well aware of the advantages and disadvantages of self-representation, he knowingly and voluntarily chose to represent himself.[9] We find no error and Propositions I, II and III are denied.

¶ 12 In Propositions IX and X, Lay argues that misconduct by a juror denied him a fair trial. Specifically, Lay claims that a juror failed to disclose that he (1) knew Lay's ex-wife, Tammy Lay, and (2) had read a newspaper account of the crime before trial. To support these arguments, Lay filed a Motion

5. *Johnson v. State*, 1976 OK CR 292, 556 P.2d 1285, 1297 (trial courts strongly urged to appoint standby counsel when defendant proceeds *pro se*).

6. *McQueen v. Blackburn*, 755 F.2d 1174, 1178 (5th Cir.1985)(appointment of standby counsel not required); *People v. Romero*, 694 P.2d 1256, 1265 (Colo.1985)(defendant has no right to appointment of standby counsel).

7. *Johnson*, 556 P.2d at 1296.

8. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525, quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1943).

9. Here we find Lay's waiver of counsel was adequate. In a death penalty case, the trial court must explain in detail to any defendant desiring *pro se* representation how the penalty phase of a capital trial works.

for New Trial which was denied by the trial court after an evidentiary hearing.

¶ 13 To succeed on his claim of juror misconduct and be granted a new trial, Lay must establish "both prejudice and harm as a result of the juror's service." [10] We review this claim giving substantial deference to the trial court's findings.[11]

¶ 14 Lay's initial claim is that the juror failed to disclose his past relationship with a witness, Tammy Lay. As a result, Lay claims that the juror was biased and dishonest, denying Lay a fair trial. According to Tammy Lay's testimony at the hearing on the motion for a new trial, this particular juror was a customer of the Westside Gentlemen's Club where Tammy worked as a waitress and manager. Tammy testified that the juror had sexually propositioned her a few times and had offered to help her get a car despite credit problems. The juror testified at the evidentiary hearing that he recognized Tammy at trial but assumed it was from his occupation as a car salesman, although conceding that it could have been from her employment as a waitress. The juror denied ever propositioning Tammy or that their prior contact had any affect on his impartiality as a juror.

¶ 15 After hearing the evidence, the trial court found there was no evidence of juror misconduct. The trial court's ruling is supported by the record. Despite having met Tammy Lay previously, there was no evidence that the juror was anything other than fair and impartial. Lay failed to establish prejudice or harm by this juror's service.[12] This argument is denied.

¶ 16 Lay's next argument is that this same juror read a newspaper article of the charged crime and disclosed facts from the article to other jurors. At some point, the juror may have been exposed to such a newspaper article. At the hearing on the Motion for New Trial, however, it was obvious that the only information he learned from this article was that the case involved a father and son who had robbed a bank. There was no indication at the hearing that as a result of this article, the juror had formed an opinion about the case or exposed other jurors to prejudicial information. The appellant has the burden "to show by clear and convincing evidence that (1) the jurors were specifically exposed to media reports which (2) were prejudicial to the judgment. Mere proof that a juror or jury was exposed to [a] factual account of the trial will not meet this burden." [13] At best, the evidence at the hearing establishes that a juror or jurors may have been exposed to a limited factual account of the case. There was no evidence that these media reports were prejudicial to the judgment. This argument is denied.

¶ 17 In Proposition XI, Lay argues that it was error for the trial court to not ask potential jurors if they knew the potential witnesses in the case. Specifically, as a result of this failure, he argues that a juror was allowed to serve on the jury even though he had previous contact with the defendant's ex-wife. The trial court has discretion over the manner and method of *voir dire*.[14] Moreover, it is trial counsel's responsibility to examine prospective jurors and discover any facts that may affect their qualifications to serve.[15] Lay had the opportunity to examine the jurors, including asking them if they knew the potential witnesses but failed to do so.[16] Here, Lay is trying to shift the responsibility to the trial court for his

---

**10.** *Edwards v. State*, 1991 OK CR 71, 815 P.2d 670, 674.

**11.** *Matthews v. State*, 2002 OK CR 16, 45 P.3d 907, 912 (trial court's ruling on motion for new trial based upon juror misconduct will not be overturned unless clearly erroneous).

**12.** In his brief, Lay makes several hypothetical allegations as to how the juror's service may have prejudiced or harmed him at trial. These allegations were unsupported by the evidence and entirely speculative.

**13.** *Tomlinson v. State*, 1976 OK CR 206, 554 P.2d 798, 804.

**14.** *Jones v. State*, 2006 OK CR 5, 128 P.3d 521, 533.

**15.** *Id.*

**16.** *Id.* at 533–34.

own failures as his own *pro se* counsel. Lay has not shown that the trial court denied him a substantial right or that he was prejudiced by the trial court's method of jury selection. This Proposition is denied.

¶ 18 In his pro se supplemental brief, Lay argues that he was deprived of his constitutional right to present his necessity defense. Contrary to Lay's assertion, the trial court allowed him great leeway in presenting his defense even though it is legally unsupportable.

¶ 19 Through his testimony and that of his son, Lay was allowed to present his defense: he attempted to rob the bank to obtain money to buy guns to avenge perceived government atrocities. In a nutshell, the Lays claimed they were trying to defend the freedoms guaranteed by the founding fathers in the Constitution by overthrowing the tyranny of our current government. Moreover, the Lays argued that they never intended for anyone to be hurt in the attempted robbery but were prepared in the event of confrontation.

¶ 20 The defense of necessity is only allowed when a defendant commits a lesser harm to avoid a greater harm.[17] Here, killing an innocent man cannot be said to be a lesser harm than the perceived necessity of starting a revolution. As a result, Lay's argument, although presented adequately to the jury due to the great tolerance of the trial court, is not supported by the law or facts. This argument is denied.

¶ 21 In Proposition IV, Lay submits that his Constitutional right to a fair and individualized sentencing hearing was violated because the trial court failed to order *sua sponte* a sentencing stage severance from his co-defendant, Chris Lay, at trial. Alternatively, Lay claims that the trial court should have instructed the jury *sua sponte* that evidence introduced on behalf of or against

Chris Lay could not be considered as evidence regarding him. Both arguments fail.

¶ 22 The trial court gave Wade Lay several opportunities to have his trial severed from that of his son, Chris. However, both Lays repeatedly stated that they did not want separate trials as they believed that their defense was stronger when united. This was probably true for Chris at sentencing: as Wade's appellate counsel details at length in his brief, part of Chris's second stage argument was that he was the victim of his father's beliefs. As positive as the arguments might have been for Chris, they also likely negatively affected Wade at sentencing.

¶ 23 However, Lay never requested severance and in fact, repeatedly opposed it. The trial court told Lay that the trials would be severed if he changed his mind. The trial court granted Wade Lay's demand for a joint trial and as a result, he cannot now complain of error.[18] This argument is denied.

¶ 24 Lay alternatively claims that the trial court should have instructed the jury that evidence introduced on behalf of or against Chris Lay should not be considered in regard to himself. Lay did not request this instruction or object to the instructions given at trial. As a result, Lay has waived this claim for all but plain error which does not exist.[19] The instructions as a whole adequately required the jury to give each defendant separate and individualized sentencing consideration.[20] This argument is denied.

¶ 25 In Proposition V, Lay challenges the victim impact evidence admitted at his trial. Lay specifically contends that a portion of the testimony of the victim's sister, Tonya Collier, was improper, and that Collier and the victim's other sister, Kimilla Tryon, displayed improper emotion during their testimony. These arguments are meritless.

17. *Jones v. City of Tulsa*, 1993 OK CR 35, 857 P.2d 814, 815–816.

18. *Gourley v. State*, 1989 OK CR 28, 777 P.2d 1345, 1349 (defendant cannot complain of error he invited); *Staley v. State*, 64 Okla.Crim. 302, 79 P.2d 818, 824 (defendant can waive severance of his trial).

19. *Romano v. State*, 1995 OK CR 74, 909 P.2d 92, 120 (failure to object to instructions or request instruction waives all but plain error).

20. *Smith v. State*, 2007 OK CR 16, 157 P.3d 1155, 1179 (no error if instructions as a whole accurately state the law).

¶ 26 Lay specifically argues that Collier exceeded the bounds of appropriate victim impact testimony when she testified that: "I made a promise to my mother before she died to always be there for Kenny and watch out for him. I feel so much like I failed my mother." Lay did not object to this testimony.[21] Regardless, there was no error. Collier's statement was proper because it concerned the specific emotional burden that her brother's death placed on her.[22]

¶ 27 It does appear that the victim impact witnesses cried while testifying. Lay did not object to their testimony or ask for a recess to allow either witness to regain composure.[23] More importantly, their display of emotion does not appear to have interfered with the recitation of their statements. Both witnesses' statements were in compliance with the law as they were brief, proper, and neither unduly emotional or prejudicial.[24] As a result, we find no error in the victim impact testimony.

¶ 28 In Proposition VI, Lay requests this Court to reconsider its prior ruling that the jury need not find that aggravating circumstances must outweigh mitigation beyond a reasonable doubt before imposing the death penalty. As Lay concedes, this issue has been addressed and denied.[25] Lay offers no compelling reason for this Court to reconsider this issue. This Proposition is denied.

¶ 29 In Proposition VII, Lay claims that the trial court erred in failing to instruct the jury as required by OUJI–CR (2d) 4–77. This instruction requires that when the State relies in part, as here, on circumstantial evidence to prove the existence of the aggravating circumstances, "all of the facts and circumstances, taken together, must be inconsistent with any reasonable theory or conclusion other than the existence of the aggravating circumstances." The trial court modified this instruction for guilt/innocence determinations to conform to the holding of *Easlick v. State*.[26] *Easlick* overruled years of settled law and abolished the "reasonable hypothesis" standard in the guilt/innocence instructions and on appellate review of sufficiency of the evidence claims.[27] *Easlick* did not address OUJI–CR (2d) 4–77. As a result, the "reasonable hypothesis" instruction is still the required jury instruction for aggravating circumstances proven, entirely or in part, by circumstantial evidence.

¶ 30 However, Lay failed to object to the instruction as modified, waiving all but plain error. There was no plain error as "when the evidence is both direct and circumstantial, it is not error to fail to give an instruction when none is requested."[28] Here, the evidence was clearly a combination of both direct and circumstantial evidence. Moreover, as indicated in Proposition XIII, all the aggravating circumstances were overwhelmingly proven beyond a reasonable doubt. As a result, this Proposition is denied.

¶ 31 In Proposition VIII, Lay contends that the "continuing threat" aggravating circumstance is unconstitutional. As Lay acknowledges, this Court has upheld the constitutionality of this aggravating circumstance[29]

---

21. Lay argues that he did object to the victim impact testimony, but nowhere in the record is that evident. A reading of the record supports the State's assertion that the trial court was attempting to give Lay an opportunity to object, but then directed some additional statements to his co-defendant's counsel. After those questions, the trial court returned to Wade Lay and he did not add anything or object.

22. *DeRosa v. State*, 2004 OK CR 19, 89 P.3d 1124, 1151 (victim's relative permitted to testify regarding emotional impact).

23. Lay again appears to be attempting to use his codefendant's objection to his benefit.

24. 22 O.S.2001, § 984.

25. *Torres v. State*, 2002 OK CR 35, 58 P.3d 214, 216.

26. 2004 OK CR 21, 90 P.3d 556.

27. *Id.* at 559. I continue to believe that it was error to overrule our previous precedent regarding the "reasonable hypothesis" test for circumstantial evidence and would decline to adopt a change to OUJI–CR (2d) 4–77. See *id.* at 560 (Chapel, J dissenting).

28. *Grimmett v. State*, 1977 OK CR 320, 572 P.2d 272, 274.

29. *Myers v. State*, 2006 OK CR 12, 133 P.3d 312, 333–34, *cert. denied*, —— U.S. ——, 127 S.Ct. 939, 166 L.Ed.2d 719 (2007) (expressly rejecting the

and Lay gives us no reason to revisit the issue. This Proposition is denied.

¶ 32 In Proposition XIII, Lay argues that the evidence was insufficient to support two aggravating circumstances: (1) that Lay knowingly created a risk of death to more than one person and (2) that the murder was committed so that Lay could avoid arrest or prosecution. We review the evidence in a light most favorable to the State to determine whether any rational trier of fact could have found the facts necessary to support the aggravating circumstance beyond a reasonable doubt.[30] Under this standard, the evidence here was sufficient.

¶ 33 In determining the sufficiency of this aggravating circumstance, this Court reviews the evidence to determine if Lay created a great risk of death to another in close proximity in time and intent to the murder.[31] Here, Lay and his son entered Midfirst Bank armed with guns in an attempt to rob the bank. They were confronted by the victim, an armed security guard, and a gun battle ensued. While Lay argues that he did not intend to shoot anyone other than the victim so the additional employees were not at risk of death, that unknown intent easily transfers to any unintended victims. As Lay concedes, the victim and five other bank employees were in the lobby area of bank when the guns were fired. All these employees were at a great risk of death at the time the shots were fired. This argument is denied.

¶ 34 Lay argues that the evidence was insufficient to support the aggravating circumstance that the murder was committed to avoid or prevent lawful arrest or prosecution. We review the evidence of this aggravator for proof of a predicate crime, separate from the murder, from which the defendant is attempting to avoid arrest or prosecution.[32] Here, Lay committed an attempted armed

robbery of Midfirst Bank. Kenneth Anderson intervened and foiled the robbery. In the process, Anderson was shot and killed so that Lay and his son could escape the bank and avoid arrest. The evidence was sufficient to support this aggravating circumstance. This Proposition is denied.

¶ 35 Lay concedes that there was sufficient evidence to support the continuing threat aggravating circumstance. However, Lay reasserts that the continuing threat aggravating circumstance is unconstitutional. This argument was considered and denied in Proposition VI.

¶ 36 Lay concludes by arguing that if this Court invalidates any aggravating circumstances, we must remand for resentencing. This argument is moot. We find none of the aggravating circumstances to be invalid. The aggravating circumstances were supported by sufficient evidence and are constitutional.

¶ 37 In Proposition XII, Lay essentially argues that his death sentence was imposed capriciously. He bases his argument on the errors raised and rejected in this appeal. However, we must review this claim to determine: (1) whether the death sentence was imposed under the influence of passion, prejudice or other arbitrary factor, and (2) whether the aggravating circumstances were supported by the evidence.[33] Regarding the first inquiry, we find that Lay's death sentence did not result from passion, prejudice or other arbitrary factor.

¶ 38 Regarding the second inquiry, Lay challenges the sufficiency of the evidence in Proposition XIII and the constitutionality of the continuing threat aggravating circumstance in Propositions VIII and XIII. As earlier discussed, these arguments are without merit. The jury found three aggravating circumstances: (1) that the defendant knowingly created a great risk of death to more

"probability" argument raised herein); *Walker v. State*, 1994 OK CR 66, 887 P.2d 301, 320 and *Nguyen v. Reynolds*, 131 F.3d 1340, 1354 (10thCir.1997).

30. *Salazar v. State*, 1996 OK CR 25, 919 P.2d 1120, 1123.

31. *Valdez v. State*, 1995 OK CR 18, 900 P.2d 363, 382.

32. *Romano v. State*, 1995 OK CR 74, 909 P.2d 92, 119.

33. 21 O.S.2001, § 701.13(C).

than one person; (2) that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (3) that there was the existence of a probability that the defendant would constitute a continuing threat to society. All were supported by sufficient evidence.

¶ 39 Additionally, the jury was instructed on six (6) specific mitigating circumstances [34] and instructed to consider any other mitigating circumstances that existed. Upon reviewing the record, we find that the aggravating circumstances outweighed the mitigating circumstances and that Lay's death sentence was both appropriate and factually substantiated.

### Decision

¶ 40 The Judgments and Sentences of the District Court are **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2008), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, V.P.J., A. JOHNSON and LEWIS, JJ., concur.

LUMPKIN, P.J., concurs in results.

LUMPKIN, Presiding Judge, concurring in results.

¶ 1 I concur in the results reached by the Court in this case. However, I have a problem when the Court says, when discussing the appointment of standby counsel, that it "is not now required by either the State or Federal Constitution," and then holding "we require that the trial court appoint standby counsel in all capital cases where an indigent defendant is representing himself/herself." While that decision might be the best policy for a trial judge to follow, there is no basis in the law to make such a pronouncement. In fact, it violates the holding in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) that allows a defendant to

knowingly waive the right to counsel. It is improper to force a standby counsel on a defendant who does not want standby counsel. This is an example of an appellate court wanting to impose its view of what is a good practice on the trial courts while disregarding what the law says about the issue. While I agree that in the proper case this would be the best practice, I cannot join in the carte blanche ordering it in all cases.

¶ 2 I also disagree with the Court's analysis of *pro se* Proposition VII regarding the circumstantial evidence instruction. This Court's decision in *Easlick v. State,* 2004 OK CR 21, 90 P.3d 556, fully set out the historical legal basis for the Court's decision to abolish the antiquated and legally unsupportable "reasonable hypothesis test" for circumstantial evidence. That decision controls over the now vacated by implication OUJI–CR (2d) 4–77. Trial judges are required to instruct based on the current law, not on what the law used to be. Therefore, the Court's statement that OUJI–CR (2d) 4–77 is still applicable is a gross misstatement of the law.

---

**34.** These included: (1) Wade Lay acted under the sincere belief that his actions were for a broad benefit of society; (2) Wade Lay firmly believed he was protecting the ones he loves and was responding to their needs; (3) Wade Lay was uniquely affected by the misbehavior of government officials; (4) Wade Lay is a loving father; (5) Wade Lay poses no future threat; (6) Wade Lay has expressed regret and sincere desire to influence hearts and minds in a positive direction in hopes that this type of tragedy would not be repeated.