2006 OK CR 15

**Sammy Dean THRASHER, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. F–2004–1004.

Court of Criminal Appeals of Oklahoma.

April 27, 2006.

---

Aaron Goodman, Ronald Wallace, Assistant Public Defenders, Tulsa, OK, attorneys for appellant at trial.

Jared Sigler, Assistant District Attorney, Tulsa County, Tulsa, OK, attorney for the State at trial.

Stephen J. Greubel, Assistant Public Defender, Tulsa, OK, attorney for appellant on appeal.

W.A. Drew Edmonson, Attorney General of Oklahoma, Julian S. Smith, Assistant Attorney General, Oklahoma City, OK, attorneys for appellees on appeal.

### OPINION

A. JOHNSON, Judge.

¶ 1 Sammy Dean Thrasher, Appellant, was tried by jury in the District Court of Tulsa County, Case No. CF–2004–426, and convicted of Count I—First Degree Rape, After Former Conviction of Six Felonies in violation of 21 O.S.Supp.2002, § 1111 and 21 O.S. 2001, § 1114 and Count IV—Lewd Molestation, After Former Conviction of Six Felonies in violation of 21 O.S.Supp.2003, § 1123.[1] The jury fixed punishment at life without the possibility of parole on Count I and life imprisonment on Count IV. The Honorable Gordon D. McAllister, Jr., who presided at trial, sentenced Thrasher accordingly. From this judgment and sentence, Thrasher appeals.

¶ 2 On January 25, 2004, L.K.'s mother allowed her to spend the night with Sammy Dean Thrasher, a family acquaintance. L.K. was eleven years old.

¶ 3 Later that night, when L.K. had gone to bed at his house, Thrasher forced her to undress and sexually assaulted her. Her testimony at trial about the assault was graphic and detailed. She escaped from Thrasher, finding safety by running to another bedroom occupied by Ms. Mosby and her family. After hearing the girl's story, Mosby drove her back to her mother who accompanied her to Hillcrest Hospital where she underwent a sexual assault examination. The examination disclosed a tear in her rectal area consistent with her report of anal penetration.

¶ 4 Thrasher made a statement to Tulsa Police Detective Lawson. We will pass over the details of his account. It is sufficient to say that while he admitted the sexual conduct with L.K., he reported that he was an unwilling participant, the victim of a physical attack by the child.

¶ 5 Thrasher raises two propositions of error: first, his right to confrontation was violated when his cross-examination of the victim L.K. was limited; and second, his statement to Detective Lawson should have been suppressed. Neither claim merits relief.

### Right to Confrontation

¶ 6 Thrasher contends that his Sixth Amendment right to confrontation was abridged when the trial court limited his cross-examination of the victim. He argues, specifically, that the trial court committed error of constitutional dimension by refusing to allow him to continue before the jury his questioning of L.K. concerning any medication she might be taking or might have

---

1. The jury acquitted Thrasher of Count II—Attempted First Degree Rape and Count III—Forcible Sodomy.

taken.[2] The trial court ruled any possible relevance the question had was outweighed by its prejudicial value.[3] We agree.

■ ¶ 7 The Sixth Amendment guarantees a defendant the right to cross-examine witnesses; it also allows a trial judge to place reasonable limits on cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). Not all limitations on the cross-examination of a prosecution witness run afoul of the right of confrontation. Trial judges have wide latitude to impose reasonable limits on such cross-examination based on concerns about "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679, 106 S.Ct. at 1435.

■ ¶ 8 We generally review a trial judge's limitations on the extent of cross-examination for an abuse of discretion. *Scott v. State*, 1995 OK CR 14, ¶ 28, 891 P.2d 1283, 1294. Where limitations directly implicate the Sixth Amendment right of confrontation, we review the limitation *de novo. See Scott*, 1995 OK CR 14, ¶¶ 21–27, 891 P.2d at 1292–93.

■ ¶ 9 In determining whether the Sixth Amendment has been violated, we look to see whether there was sufficient information presented to the jury to allow it to evaluate the witness and whether the excluded evidence was relevant. *Id.* "[W]e 'distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion.'" *United States v. Degraffenried*, 339 F.3d 576, 581 (7th Cir.2003) *quoting United States v. Saunders*, 973 F.2d 1354, 1358 (7th Cir.1992). "Limiting the right to cross examine for im-

peachment purposes involves a peripheral concern." *Id.*

■ ¶ 10 Our review of the record convinces us that we are dealing with "peripheral concerns," and we can see no abuse of discretion. L.K. was adequately cross-examined. Thrasher's counsel conceded when making his offer of proof that he did not know why L.K. took these medications and that he had no medical expert to explain the effects of these medications on L.K. L.K. testified *in camera* that she did not know the names of the medications she took, but that they were prescribed to help her stay awake during the day and to sleep at night. We fail to see how her credibility could be attacked on a matter not within her firsthand knowledge. To allow the jury to infer that these drugs were prescribed because L.K. has schizophrenia and that they affected either her ability to perceive events or recall them would be to engage in pure speculation. What Thrasher wanted to do was ask the question and leave it dangling in the air, hoping (without evidence) that the jury would then disbelieve L.K.'s testimony. The trial court was wise to not let this questioning continue and did not err in limiting Thrasher's cross-examination of the complaining witness.

## Right to Counsel

■ ¶ 11 Secondly, Thrasher claims his statement to Detective Lawson should have been suppressed because he clearly invoked his right to counsel during his interview, making his incriminating statements that followed inadmissible. The record shows Thrasher knowingly and voluntarily waived his *Miranda* rights prior to questioning. During the interview, however, Thrasher

2. L.K. was asked, "isn't it true that currently you are taking some medication?" (Tr. 201)

3. The trial court held an *in camera* hearing and Thrasher's counsel made an offer of proof that he had an "idea" from the medical records that L.K. was taking Zyprexa and Abilify and that according to his internet research, these drugs are antipsychotics commonly prescribed for schizophrenia. (Tr. 201) Defense counsel conceded that he did not know why L.K. took these medications and that he had no medical expert to explain the effects of these medications on L.K.

The trial court ruled that the offer of proof provided by counsel was not evidence, and without additional evidentiary support, the prejudicial value of the question outweighed its probative value. (Tr. 204) The trial court went on to allow defense counsel to question L.K. *in camera* about any medications she was taking. Her testimony revealed that she understood that she took two medications, the names of which she did not know, to help her stay awake during the day and sleep at night. She testified that they did not affect her ability to think clearly.

asked, "Does [my statement] have to be from a statement from here or through an attorney to you?" Lawson asked Thrasher what he meant and Thrasher said, "Can I make a statement to an attorney to give to you?" Lawson told him that he would need to hear the statement from Thrasher himself and Thrasher then made incriminating statements. The trial court found that Thrasher's statement was equivocal and that Detective Lawson was not required to stop questioning. (Hrg.09/02/04 19). We agree.

¶ 12 Whether a suspect has invoked his right to counsel is a mixed question of law and fact. When we conduct our independent review of a trial court's determination of this issue, we review the trial court's findings of historical fact for clear error.[4] *Griffith · v. State*, 1987 OK CR 38, ¶ 13, 734 P.2d 303, 306. Here, the trial court did not make any factual findings regarding what Thrasher actually said because the interview was videotaped and the parties did not dispute the content of his statements to the police. Our consideration of the trial court's denial of Thrasher's motion to suppress is restricted to a *de novo* review of the legal issue whether Thrasher's words, taken in context, were sufficient to invoke his right to counsel.

¶ 13 A defendant who is in custody and has invoked his right to counsel pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), may not be interrogated further by authorities unless a lawyer has been made available or the suspect reinitiates conversation. *Davis v. United States*, 512 U.S. 452, 458, 114 S.Ct. 2350, 2354–55, 129 L.Ed.2d 362 (1994). Whether an accused invokes his right to counsel is an objective inquiry. *Id.* at 459, 114 S.Ct. at 2355. The suspect must "articulate his desire to have counsel present sufficiently

clearly that a reasonable police officer would understand the statement to be a request for an attorney." *Id.* at 459, 114 S.Ct. at 2355. Failure to meet the requisite level of clarity does not require the officers stop questioning the suspect.[5] *Id.*

¶ 14 In *Davis*, the Court held "Maybe I should talk to a lawyer" was ambiguous, and the officers were not required to cease questioning of the defendant. *See id.* at 462, 114 S.Ct. at 2357. Thrasher's question is equally ambiguous. A reasonable officer in light of the circumstances would not have understood Thrasher's statement as an affirmative, unambiguous invocation of his constitutional right to an attorney, but an inquiry into how he could give his statement.[6] The trial court did not err in denying Thrasher's motion to suppress.

## DECISION

¶ 15 The Judgment and Sentence of the trial court is **AFFIRMED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2005), the **MANDATE** is **ORDERED** issued upon delivery and filing of this decision.

CHAPEL, P.J., C. JOHNSON and LEWIS, JJ.: concur.

LUMPKIN, V.P.J.: concur in results.

LUMPKIN, Vice–Presiding Judge: Concurring in Results.

¶ 1 I concur in the affirmance of the judgment and sentence however I write separately to address certain statements concerning our standard of review.

¶ 2 It is well established that the extent and scope of cross examination is left to the discretion of the trial court. *Scott v. State*,

---

4. Contrary to the concern expressed in the minority opinion that "clear error" is a standard inconsistent with Oklahoma's jurisprudence on "plain error," we do not address the issue of plain error in this case. "Plain error" applies to issues not raised or preserved in the trial court. *Simpson v. State*, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 693. It is not implicated here. "Clear error," on the other hand, is a settled term of art which applies to the review of findings of fact. *See Murphy v. State*, 2003 OK CR 6, ¶ 11, 66 P.3d 456, 458; *Matthews v. State*, 2002 OK CR 16, ¶ 3,

45 P.3d 907, 912; *Ellis v. State*, 1990 OK CR 43, ¶ 11, 795 P.2d 107, 110.

5. Although it is recommended that the interrogating officer clarify the meaning of the suspect's ambiguous statement, such clarification is not required. *Id.* at 461–62, 114 S.Ct. at 2356.

6. The record shows that Detective Lawson clarified with Thrasher minutes later that Thrasher was not invoking his right to counsel and wished to finish the interview without an attorney.

1995 OK CR 14, ¶ 28, 891 P.2d 1283, 1294. This Court will not disturb the trial court's decision absent clear abuse resulting in manifest prejudice to the defendant. *Id. See also Davis v. State,* 2004 OK CR 36, ¶ 30, 103 P.3d 70, 79; *Williams v. State,* 2001 OK CR 9, ¶ 94, 22 P.3d 702, 724, *cert. denied,* 534 U.S. 1092, 122 S.Ct. 836, 151 L.Ed.2d 716 (2002); *Reeves v. State,* 1991 OK CR 101, ¶ 30, 818 P.2d 495, 501; *Jackson v. City of Oklahoma,* 1984 OK CR 57, ¶ 5, 678 P.2d 725, 726; *Locke v. State,* 1976 OK CR 227, ¶ 22, 554 P.2d 847, 850. By the plain language of *Scott,* it does not set out a standard of *de novo* review where the limitations directly implicate the 6th Amendment right of confrontation. 1995 OK CR 14, ¶ 19, 891 P.2d at 1292. This Court has not carved out an exception to the general rule for allegations of confrontation clause violations.[1]

¶ 3 Further, regarding Appellant's claimed violation of his right to counsel, the Court has improperly interpreted *Griffith v. State,* 1987 OK CR 38, 734 P.2d 303. I will agree that recently this Court has held that mixed questions of law and fact are reviewed *de novo. Davis v. State,* 2005 OK CR 21, ¶ 7, 123 P.3d 243, 246.[2]

¶ 4 However, the Court's interpretation that *Griffith* provides we review for "clear error" sets out a standard of review inconsistent with our jurisprudence. In *Bartell v. State,* 1994 OK CR 59, 881 P.2d 92 and *Simpson v. State,* 1994 OK CR 40, 876 P.2d 690, we addressed the scope of review on appeal when an objection has not been preserved during the trial. In *Simpson,* our review of this Court's jurisprudence showed there were two types of errors raised on appeal—those that had not been raised in the trial court and those that had been raised. As to those claims of error which had not been raised, we said: "[f]ailure to object with specificity to errors alleged to have occurred at trial, thus giving the trial court an opportunity to cure the error during the course of trial, waives that error for appellate review unless the error constitutes fundamental error, i.e. plain error." As to errors raised which had been raised before the trial court, we stated: "[e]rror preserved by timely objection during the course of trial, together with plain error reviewed for the first time on appeal, will be analyzed to determine if the error requires reversal or whether the error was harmless." 1994 OK CR 40, ¶ 2, 876 P.2d at 693. All non-constitutional errors and all but three specific constitutional violations are subject to review for harmless error. 1994 OK CR 40, ¶ 36, 876 P.2d at 702. *See also Bartell,* 1994 OK CR 59, ¶¶ 15–20, 881 P.2d at 97–100.

¶ 5 "Clear error" is a term which has not been used in our jurisprudence. However, when this Court has reviewed a trial court's action for abuse of discretion, we always defer to the trial court's ruling unless it is "clearly erroneous". That standard of review is distinctly different from this "term of art". The meaning of the term and the standard of review it employs is not clear from this opinion. Prior case law has shown that deviations from the historic language of our jurisprudence confuses rather than clarifies the law. Oklahoma has a distinct state jurisprudence in reviewing claims of error on appeal. We do not need to alter or "federalize" what has been developed and employed effectively over the last 100 years.

---

1. In *Scott,* this Court did state that its finding of harmless error was made "after an independent examination of the entire record". 1995 OK CR 14, ¶ 27, 891 P.2d at 1293. However, that does not establish this Court's review was a *de novo* review.

2. I accede to this finding based on *stare decisis. Davis* cited to *Hanes v. State,* 1998 OK CR 74, 973 P.2d 330. In *Hanes,* I dissented writing that our jurisprudence reveals this Court has previously reviewed mixed questions of law and fact based upon an abuse of discretion standard, asking whether the trial court's findings of fact are supported by the record. See e.g. *Harris v. State,* 97 Okla.Crim. 259, 261 P.2d 909, 915 (1953) (Lumpkin, J., dissent) 1998 OK CR 74, ¶ 4, 973 P.2d at 338.