2009 OK CR 13

**John Fitzgerald HANSON, Appellant**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. D–2006–126.**

Court of Criminal Appeals of Oklahoma.

April 13, 2009.

Jack E. Gordon, Jr., Attorney at Law, Claremore, OK, Steven M. Hightower, Attorney at Law, Tulsa, OK, attorneys for defendant at trial.

Doug E. Drummond, William J. Musseman, Assistant District Attorneys, Tulsa County, Tulsa, OK, attorneys for the State at trial.

Jamie D. Pybas, Kathleen M. Smith, Capital Direct Appeals Division, Oklahoma Indigent, Defense System, Norman, OK, attorneys for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorneys General, Oklahoma City, OK, attorneys for appellee on appeal.

### OPINION

A. JOHNSON, Vice–Presiding Judge.

¶ 1 Appellant John Fitzgerald Hanson appeals his sentence of death for the murder of Mary Bowles. Hanson and his co-defendant Victor Miller were originally charged in the District Court of Tulsa County, Case No. CF–99–4583, with two counts of first degree murder for the deaths of Mary Bowles (Count 1) and Jerald Thurman (Count 2).[1] Their cases were severed for trial and a jury convicted Hanson of First Degree Malice Aforethought Murder for Bowles's death in violation of 21 O.S.Supp.1998, § 701.7(A) (Count 1), and First Degree Felony Murder for Thurman's death in violation of 21 O.S.Supp.1998, § 701.7(B) (Count 2).[2] The jury sentenced Hanson to death for Bowles's murder in Count 1 and fixed punishment of life imprisonment without the possibility of parole for Thurman's murder in Count 2.[3] Judgment and Sentence were imposed by the district court in accordance with the jury's verdict and Hanson appealed. We affirmed both Hanson's conviction and sentence for Thurman's murder. We affirmed his conviction for Bowles's murder, but vacated his death sentence and remanded the matter for a new sentencing proceeding in *Hanson v. State*, 2003 OK CR 12, 72 P.3d 40. Hanson's resentencing jury trial was held January 9–24, 2006, before the Honorable Caroline E. Wall. That jury found three aggravating circumstances and he was again sentenced to death for Bowles's murder.[4] We now affirm Hanson's death sentence.

---

1. Hanson and Miller were charged in the alternative with malice aforethought murder and felony murder in both counts.

2. Miller was convicted of First Degree Felony Murder for Bowles's death and sentenced to life imprisonment without the possibility of parole and convicted of First Degree Malice Aforethought Murder for the death of Jerald Thurman and sentenced to death. Miller's convictions were reversed and remanded for new trial in *Miller v. State*, 2004 OK CR 29, 98 P.3d 738.

3. The jury found three aggravating circumstances to support the death penalty in Count 1: (1) Hanson was previously convicted of a felony involving the use or threat of force; (2) there existed a probability that Hanson would pose a continuing threat to society, and (3) that Hanson knowingly created a great risk of death to more than one person.

4. The jury found: (1) Hanson was previously convicted of a felony involving the use or threat of force; (2) that Hanson knowingly created a great risk of death to more than one person, and

## I.  FACTS

¶ 2  Hanson and Miller kidnapped Mary Bowles from the Promenade Mall in Tulsa in the late afternoon of August 31, 1999.  They drove her in her car to an isolated area around a dirt pit near Owasso.  Jerald Thurman, the pit's owner, was there loading a dump truck for a delivery.  Thurman was talking to his nephew on a cell phone when he saw the car circling through the pit.  Moments later, with Hanson and Mary Bowles still in the car, Miller shot Thurman four times with a .38 revolver.  Miller moved the car a short distance from the shooting, stopped, and told Hanson he knew what he had to do.  Thereupon, Hanson took Bowles out of the car and, as she lay in a roadside ditch, shot her multiple times with his 9 mm semiautomatic pistol.  The two men covered her body with branches and fled.  Neighbors across the street from the dirt pit heard gunshots and saw an unfamiliar car leaving the pit area.  Investigating, they found Thurman lying near his dump truck at the roadway entrance to the pit.  He was taken to the hospital, but died two weeks later without regaining consciousness.  Bowles's decomposed body was found in the roadside ditch on September 7.

¶ 3  Hanson and Miller abandoned Bowles's car at the Oasis Motel a few miles away.  The car was not discovered there until September 9.  Police lifted Hanson's and Miller's fingerprints from the seatbelt buckles and discovered that Hanson had rented a room there shortly after the murders.  The motel clerk did not see Hanson or his companion after Hanson filled out the registration card on August 31st.

¶ 4  On September 3, 1999, Hanson and Miller robbed the Dreamland Video Store.  Hanson tied up a customer in a backroom, put a gun to his head and took his wallet.[5]  On September 8, the pair robbed the Tulsa Federal Employees Credit Union.

¶ 5  The crime spree came to an end when, on September 9, Miller's wife made an anonymous phone call telling police that Hanson and Miller, the credit union robbers, were at the Muskogee Econolodge.  Law enforcement officials from various jurisdictions coordinated this information and arrested Miller and Hanson there.  Miller came out immediately; Hanson stayed in the room until driven out by tear gas.  While alone in the room Hanson hid the murder weapons in the toilet tank.

¶ 6  Hanson's former co-worker, Rashad Barnes, testified that Hanson had stopped by his home a few days before that arrest in Muskogee and confessed that he and Miller "carjacked" an old lady and that he (Hanson) had killed her.[6]

## II.  CONFRONTATION CLAUSE

¶ 7  Hanson contends admission of the late Rashad Barnes's prior recorded testimony from his original trial violated his constitutional right to be confronted with the witnesses against him.  He argues this testimonial hearsay should have been excluded from his resentencing trial because he did not have a full and fair opportunity to cross-examine Barnes about impeachment evidence that came to light only after his original trial.

¶ 8  A criminal defendant has a fundamental constitutional right to be confronted with the witnesses against him.  U.S. Const. amend. VI;  Okla. Const. art. 2, § 20.  We review a district court's evidentiary rulings for an abuse of discretion;  the determination of whether admission of hearsay evidence violates the Confrontation Clause, however, is a question of law we review de novo.  *See Pavatt v. State*, 2007 OK CR 19, ¶ 56, 159 P.3d 272, 290, *cert. denied*, — U.S. ——, 128 S.Ct. 1229, 170 L.Ed.2d 62 (2008);  *Thrasher v. State*, 2006 OK CR 15, ¶ 8, 134

---

(3) that Hanson committed the murder for the purpose of avoiding or preventing a lawful arrest or prosecution.  21 O.S.1991, § 701.12(1), (2) and (5).

5.  Prior to the murders, Hanson and Miller robbed the Apache Liquor Store, taking money and the .38 revolver Miller later used to kill Thurman.  During the robbery, they ordered the clerk and a customer to go to a backroom, but both women refused.  Hanson and Miller threatened to kill the women and fled.

6.  Barnes died before Hanson's resentencing trial and his testimony from Hanson's original trial was read into the record.

P.3d 846, 849. That review is conducted according to the rule promulgated by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

¶ 9 Testimony from a former trial is the kind of "testimonial hearsay" admissible under *Crawford* when two fundamental Sixth Amendment conditions are met: (1) the witness must be unavailable, and (2) the defendant must have had a prior opportunity to cross examine the witness.[7] *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374. Hanson does not contest that Barnes was unavailable at his resentencing trial; nor does he contend that he was unable to cross-examine Barnes to challenge Barnes's testimony inculpating him in the murders of Jerald Thurman and Mary Bowles with evidence available at the time of his first trial. He argues instead that his prior opportunity to examine Barnes was constitutionally inadequate because new impeachment evidence was discovered after the first trial. The new impeachment evidence consisted of: 1) a statement made by Hanson's co-defendant, Victor Miller, to a third-party—a fellow inmate—that he himself killed a woman;[8] and 2) Miller's testimony at his own trial that it was Barnes and Hanson who committed the murders. Barnes died before defense counsel could question him about this new evidence to discredit him. Therefore, Hanson maintains Barnes's unavailability at his re-sentencing trial created an insurmountable constitutional impediment to admission of Barnes's prior testimony. We disagree.

¶ 10 Hanson cross-examined Barnes at his original trial and exposed the weaknesses in his testimony. The evidence that Miller had told another inmate that he killed the woman himself was presented at Hanson's resentencing trial through the testimony of Detective Michael Nance.[9] Miller's statement taking responsibility for shooting a woman was admitted as a statement against penal interest and was offered to show that Hanson was not the triggerman in Bowles's murder. Hanson's resentencing jury had the evidence of Miller's purported admission to the inmate and the circumstances surrounding that statement to consider and weigh against Barnes's testimony about Hanson's alleged confession to him.[10] We cannot find under these circumstances that the discovery of Miller's statement rendered Hanson's prior opportunity to cross-examine Barnes constitutionally inadequate or that the trial court erred in admitting Barnes's testimony via transcript under *Crawford*.

¶ 11 Hanson never alleged at trial that his prior opportunity to cross-examine Barnes at the first trial was inadequate because of Miller's subsequent trial testimony implicating Barnes. In fact, defense counsel told the trial court specifically that the defense had not developed any other impeachment evidence except Miller's alleged confession to another inmate.[11] Because Hanson failed to object to the admission of Barnes's testimony

---

7. Under 12 O.S.Supp.2002, § 2804(B)(1), testimony given as a witness at another hearing of the same or another proceeding may be admitted if the declarant is unavailable and the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross or redirect examination. Under § 2804(A)(4), a witness is unavailable if he is unable to be present or to testify at the hearing because of death.

8. The inmate to whom Miller allegedly confessed told a Tulsa police detective that Miller said he was committing robberies with the friend he was arrested with at a hotel and that he (Miller) killed the "bitch." Miller appeared to be referring to a woman he and Hanson robbed, the implication being Bowles.

9. Detective Nance testified that he did not investigate Inmate Ahmad Henry's claim that Miller confessed to killing Mary Bowles because he discovered that Henry was a liar when Henry served as an informant on another murder case.

10. The jury was properly instructed to weigh the evidence, considering the interest, if any, which the witnesses may have in the result of the trial; the relation of the witnesses to the parties; the bias or prejudice of the witnesses, if any has been apparent; the candor, fairness, intelligence, and demeanor of the witnesses; the ability of the witnesses to remember and relate past occurrences, the means of observation, and the opportunity of knowing the matters about which the witnesses have testified. *See* OUJI–CR2d 10–8. (O.R.1566)

11. Miller's trial was held in 2002 well before Hanson's resentencing proceeding in January 2006.

on this basis, we review only for plain error and find none. *See Malone v. State*, 2007 OK CR 34, ¶ 84, 168 P.3d 185, 218.

¶ 12 There were sound reasons to shield Hanson's jury from evidence of Miller's trial testimony, including: 1) that Miller's trial testimony inculpated Hanson; 2) that Miller's trial testimony was inconsistent with his later admission regarding the murder of Bowles; and 3) that Miller's testimony exculpating himself and implicating Barnes was refuted by objective facts.[12] On this record, we cannot find that Hanson's opportunity to cross-examine Barnes at his first trial was inadequate. For this reason, we find that the admission of Barnes's testimony was in compliance with the requirements of *Crawford*. Hanson's claim that he was denied his rights under the Confrontation Clause is denied.

## III. NEWLY DISCOVERED EVIDENCE

¶ 13 Hanson learned that Miller had told another inmate that he and not Hanson had shot a woman just five days before his resentencing trial was to begin. Hanson filed an application for post-conviction relief in the district court based on newly discovered evidence. The district court granted Hanson's application for post-conviction relief and ordered a new trial on Hanson's malice aforethought murder conviction for Bowles's death. The district court stayed the proceedings for the State to appeal its ruling. The State appealed the district court's ruling in two forms: 1) it filed an Emergency Application to Assume Original Jurisdiction and Petition for Writ of Prohibition or in the alternative a Writ of Mandamus (Case No.

PR–2005–350); and 2) it filed an appeal from the district court's ruling on Hanson's post-conviction application (Case No. PCD–2005–351). We treated the latter pleading as a motion for extraordinary writ and consolidated the appeals for review. *Hanson v. State*, Case No. PR–2005–350 (April 26, 2005). We granted the writ and held that the district court did not have jurisdiction to adjudicate Hanson's post-conviction application because this Court alone has the power to consider post-conviction applications in capital cases. The district court's order granting Hanson a new trial was vacated and held void and the matter was remanded to the district court to conduct the resentencing trial ordered in *Hanson*, 2003 OK CR 12, 72 P.3d at 55.

¶ 14 Hanson claims this Court erred in reversing the district court's decision to grant him a new trial on his malice aforethought murder conviction of Bowles based on newly discovered evidence. Hanson acknowledges there is a ripeness argument in raising this claim here, but asks us to consider the claim now in the interests of justice and judicial economy.

¶ 15 We have held based on the doctrine of collateral estoppel that we will not review a claim or issue previously decided in an extraordinary writ appeal. *See, e.g., Brown v. State*, 1998 OK CR 77, ¶ 10, 989 P.2d 913, 921; *Wilson v. State*, 1998 OK CR 73, ¶ 11, 983 P.2d 448, 456. Hanson points out that the "law of the case" doctrine better fits this situation and argues application of that rule of law is discretionary.[13] We agree that the "law of the case" doctrine, barring relitigation of the same issue in successive appeals in the same case, is the applicable rule in this situation. We have previously decided that the district court was without jurisdiction to

12. The objective facts include such facts as: 1) Hanson's and Miller's fingerprints, not Barnes's, were found in Bowles's car; and 2) Hanson and Miller robbed the liquor store, the video store and the credit union and were arrested in Muskogee with the murder weapons used to kill Thurman and Bowles.

13. The "law of the case" doctrine prevents relitigation of the same issues within successive stages of the same suit. In *Dean v. Multiple Injury Trust Fund*, the Oklahoma Supreme Court stated:
    The settled-law-of-the-case doctrine bars relitigation of issues settled by an appellate opinion.

This doctrine is a rule of judicial economy designed to prevent an appellate court from twice having to decide the same issue. Whether the issue was wrongfully or rightfully decided is not to be determined; once settled on appeal, the appellate court will not review the issue on the second appeal. This doctrine does have an exception: it is not applied if the prior decision is palpably erroneous and this Court is convinced that failure to reverse it will result in a gross or manifest injustice.
2006 OK 78, ¶¶ 6 and 7, 145 P.3d 1097, 1100 (citations omitted).

decide Hanson's post-conviction application. *See Hanson v. State*, Case No. PR–2005–350 (April 26, 2005). Our decision in that appeal is the law of the case and will not be reconsidered here.

¶ 16 Nor will we consider in this appeal whether discovery of Miller's alleged confession to shooting Bowles entitles Hanson to a new trial for his murder conviction based on her death. This appeal is for reviewing errors, if any, that occurred during Hanson's resentencing trial. In dismissing Hanson's capital post-conviction application that was pending when Hanson's direct appeal was decided, we stated:

> Hanson may re-file his Application for Post–Conviction Relief, along with any appropriate accompanying motions, after the resentencing hearing is concluded. At that time Hanson may raise all post-conviction issues allowed under the Post–Conviction Procedure Act, including issues resulting from the guilt-innocence, or conviction, phase of trial as well as those raised in the resentencing hearing.

(footnote omitted). *Hanson v. State*, Case No. PCD–02–628 (June 17, 2003).

¶ 17 Hanson has filed an original application for post-conviction relief, raising the issue of newly discovered evidence. *See Hanson v. State*, Case No. PCD–2006–614. That appeal is the appropriate forum for the claim and we will consider it there.

## IV. PROSECUTORIAL MISCONDUCT

■■ ¶ 18 Hanson argues that the prosecutor engaged in deliberate misconduct during closing arguments that violated his right to due process and a fair resentencing trial. In reviewing this claim, we evaluate the alleged misconduct within the context of the entire trial, considering not only the propriety of the prosecutor's actions, but also the strength of the evidence against the defendant and the corresponding arguments of defense counsel. *Hogan v. State*, 2006 OK CR 19, ¶ 88, 139 P.3d 907, 935, *cert. denied*, 549 U.S. 1139, 127 S.Ct. 994, 166 L.Ed.2d 751 (2007). We are mindful that parties have great latitude in making arguments and drawing inferences from the evidence; we

will not grant relief unless a defendant is deprived of a fair trial and is prejudiced by improper argument. *Mack v. State*, 2008 OK CR 23, ¶ 9, 188 P.3d 1284, 1289.

¶ 19 Hanson claims that the prosecutor attempted to distract and inflame the jury by emphasizing the defenseless and sympathetic character of Mary Bowles and by asking jurors to imagine Bowles's mental state in her final moments. Hanson objected only to three of the remarks he now challenges on appeal. The trial court sustained Hanson's objections each time, curing any error. *See Mack*, 2008 OK CR 23, ¶ 9, 188 P.3d at 1289 (Error is cured where a defendant's objection to improper argument is sustained.)

■■ ¶ 20 The remaining remarks we review for plain error only. In order to warrant relief under the plain error doctrine, Hanson must show that obvious error affected his substantial rights, that is the error affected the outcome of the proceeding. *See Hogan*, 2006 OK CR 19, ¶ 38, 139 P.3d at 923. Hanson maintains that the prosecutor's appeals to the jury to consider Bowles's mental state in her final moments was irrelevant because the State had not alleged her murder was especially heinous, atrocious or cruel. It is indeed error for a prosecutor to encourage jurors to impose the death penalty solely out of sympathy for the victims. *See Williams v. State*, 2008 OK CR 19, ¶ 123, 188 P.3d 208, 230. The prosecutor here, however, argued Hanson's callous treatment of Mary Bowles was relevant to assessing his culpability. Because this was a resentencing trial, this jury had not made a finding of guilt. The prosecutor therefore emphasized the underlying facts of the crime to show that Hanson was culpable and deserving of the most severe punishment. If the prosecutor went too far in his argument about Bowles's mental agony in her final moments, Hanson cannot show that this argument affected the outcome of his trial because as he so aptly states in his brief, "[t]he jurors did not have to be told what must have been going through Mary Bowles's mind as these events unfolded, as they could figure that out on their own." *Appellant's Brief* at 53. We are not convinced that the prosecutor's argu-

ment here rendered Hanson's resentencing trial unfair.

¶ 21 Hanson also argues the prosecutor erred in asking the jury to consider the final moments experienced by Jerald Thurman and the mental state of the bank teller Hanson robbed. Hanson's participation in the events leading to Thurman's death and his actions towards the bank teller were relevant factors to consider in deciding whether Hanson would likely commit future acts of violence and be a continuing threat to society. To support a finding of future dangerousness, the State must show that the defendant's past behavior, through convictions or unadjudicated crimes, showed a pattern of criminal conduct which will probably continue to exist in the future. *Harris v. State*, 2007 OK CR 28, ¶ 14, 164 P.3d 1103, 1110, *cert. denied,* —— U.S. ——, 128 S.Ct. 1717, 170 L.Ed.2d 524 (2008). Hanson's disregard for the lives and safety of others during his crime spree was relevant to this aggravating circumstance. It is clear that any argument by the prosecutor in regard to the bank teller did not affect the outcome here. In fact, the jury rejected the continuing threat aggravator despite hearing the teller's testimony.

¶ 22 Hanson argues that it was error for the prosecutor to urge his jury to sentence him to death by arguing that since he was already serving life without parole only a death sentence could serve to redress the murder of Mary Bowles.

¶ 23 During closing argument, the prosecutor used slides to highlight evidence and specific jury instructions. Defense counsel objected to a particular slide arguing it was improper for the prosecutor to tell the jury that imposing a life sentence would not give Hanson any more time to serve and would not punish him in any way for the murder of Mary Bowles. The trial court sustained defense counsel's objection. Defense counsel also objected to any other slides containing that argument and the State agreed not to show any slides with that theme. After the ruling, however, the prosecutor continued to argue that life without parole was not acceptable under the facts and that life without parole was not enough to hold Hanson ac-

countable for Bowles's death. Defense counsel objected before the prosecutor could finish his statement. The trial court overruled the objection, saying that it did not construe the prosecutor's argument to violate the prior ruling and cautioning the prosecutor against repeating the objectionable statements.

¶ 24 The trial court correctly sustained defense counsel's first objection. We agree that it is improper for a prosecutor to argue that a sentence less than death is meaningless and would not hold a defendant accountable for a victim's death when he is already serving a life sentence. The focus of capital sentencing must be on the particular crime under consideration, and on the individual character and record of the defendant who committed it. *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976).

¶ 25 It is not clear from this record, however, to what extent, if any, Hanson's jury was exposed to improper argument. The record shows that the prosecutor cued a slide, defense counsel objected, the judge instructed someone to turn off the projector, held a sidebar and sustained Hanson's objection. What was on the slide is not in the record before us. The prosecutor noted during the sidebar that the State had not gotten to the objectionable slide. We cannot determine on this record that Hanson was prejudiced by improper argument.

¶ 26 Nor do we find that the trial court abused its discretion in overruling Hanson's objection to the prosecutor's argument that "life without parole is not enough accountability for this defendant." *See Garrison v. State,* 2004 OK CR 35, ¶ 124, 103 P.3d 590, 611 (reviewing trial court's ruling on closing argument objections for an abuse of discretion.) After the court sustained defense counsel's objection, the prosecutor removed slides with the improper argument and argued that the facts and Hanson's record justified a death sentence. Such argument was proper and we find no error.

¶ 27 Hanson also claims the prosecutor argued facts not in evidence. First, he

complains about the prosecutor's argument that Hanson restrained Bowles in the backseat by lying on top of her for fourteen miles and feeling her frail bones. Hanson did not object to the prosecutor's first reference that Hanson held Bowles down during the drive to the dirt pit. Evidence that Hanson was in the backseat, restraining Bowles, is in the record. Rashad Barnes had testified that Hanson said he got in the backseat with Mary Bowles. The prosecutor asked Barnes if Hanson said where they took her while Hanson restrained her in the backseat and Barnes said, "just a backroad." Because the prosecutor's argument had support in the record, we find no error. Hanson objected when the prosecutor argued Hanson felt her frail bones and smelled her hair. The trial court sustained defense counsel's objections and admonished the jury to disregard the remarks. The trial court's admonition cured any error. *Mack*, 2008 OK CR 23, ¶ 9, 188 P.3d at 1289.

¶ 28 Hanson contends the prosecutor argued facts not in evidence when he argued that Inmate Ahmad Henry was unbelievable because his purpose in contacting homicide detectives was to trade information for favorable treatment. Detective Nance testified that Henry was in custody on a felony charge when he contacted the police department, wanting to talk about "a bunch of murders." According to Nance, no one made any deals with Henry or promised him anything for his information. The prosecutor argued that Henry contacted Nance because he wanted a "deal." Defense counsel objected to this characterization and the State agreed to clarify. The prosecutor informed the jury that although Henry wanted a deal, no deal was ever made. He repeated that Henry got in touch with the police, wanting a deal. When defense counsel objected again, the trial court sustained the objection.

¶ 29 Although Nance never testified that Henry asked for a deal or told Nance that he would give him information in exchange for a deal, it is a fair inference that Henry, faced with his own legal troubles, contacted police with information about various murders seeking a personal benefit rather than out of some sort of civic duty. Error, if any, was cured by sustaining Hanson's objections.

¶ 30 Hanson complains the prosecutor erroneously argued that Hanson had previously been convicted of escape in an effort to show he posed a future danger. Hanson called psychologist Dr. Anita Jeanne Russell to testify that he did not pose a continuing threat to society in a regimented prison environment. She reviewed Hanson's record for the jury and testified that Hanson failed to make an appointment with his parole officer when he was on pre-parole, prompting the State to file an escape charge and causing Hanson to serve more time. The trial court nonetheless found the prosecutor's argument misleading and admonished jurors to rely on their own memory. The jury rejected the aggravating circumstance that Hanson posed a continuing threat to society in spite of the misleading argument and we are confident the court's admonishment cured any error.

¶ 31 Hanson claims the prosecutor improperly vouched for the credibility of Rashad Barnes. Argument is impermissible vouching only if the jury could reasonably believe that the prosecutor professes a personal belief in the credibility of a witness either through explicit personal assurances of the witness's veracity or by implying that information not presented to the jury supports the witness's testimony. *Warner v. State*, 2006 OK CR 40, ¶ 24, 144 P.3d 838, 860, *cert. denied*, 550 U.S. 942, 127 S.Ct. 2266, 167 L.Ed.2d 1104 (2007). The prosecutor's argument concerning the veracity of Barnes did not constitute impermissible vouching and was not error in this case.

¶ 32 Hanson argues the prosecutor misstated the law concerning the alleged aggravating circumstance of knowingly creating a great risk of death to more than one person. We will consider this argument in conjunction with Hanson's claim challenging the sufficiency of the evidence to support the aggravator.

¶ 33 Hanson argues the prosecutor made improper pleas for justice and made outrageous gestures towards him during closing argument. We have condemned prosecution arguments that the jury cannot do justice

without rendering a death verdict. But the prosecutor's pleas for justice in this case are not this sort, and fall within the bounds of acceptable argument. Nor do we find that Hanson was prejudiced by the prosecutor's gestures toward him. When this issue was raised below, the district court stated that it did not notice any objectionable gesturing on the part of the prosecutor. We cannot find the district court abused its discretion in so ruling. This claim is denied.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 34 Hanson claims that he was denied his Sixth Amendment right to effective assistance of counsel. He contends that trial counsel was ineffective for failing to: 1) adequately prepare an expert witness; 2) call Ahmad Henry; 3) properly preserve constitutional error; 4) object to prosecutorial misconduct; and 5) investigate and present available mitigating evidence.

¶ 35 This Court reviews claims of ineffective assistance of counsel *de novo*, to determine whether counsel's constitutionally deficient performance, if any, prejudiced the defense so as to deprive the defendant of a fair trial with reliable results. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Davis v. State*, 2005 OK CR 21, ¶ 7, 123 P.3d 243, 246. Under this test, Hanson must affirmatively prove prejudice resulting from his attorney's actions. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067; *Head v. State*, 2006 OK CR 44, ¶ 23, 146 P.3d 1141, 1148. "To accomplish this, it is not enough to show the failure had some conceivable effect on the outcome of the proceeding." *Head*, 2006 OK CR 44, ¶ 23, 146 P.3d at 1148. Hanson must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 36 Hanson argues trial counsel failed to provide his mental health expert with all of his prison records critical for review. As noted above, Hanson called Dr.

Russell to provide an account of his life history and to explain her assessment of his risk to commit acts of violence in the future. On cross-examination, the prosecutor questioned Russell about a 2004 prison misconduct report relating to Hanson's possession of a substantial amount of heroin in his prison cell. Dr. Russell testified that she had not seen all of Hanson's federal prison records. Dr. Russell went on to testify, however, that this information did not change her opinion that Hanson did not pose a threat to society in a regimented prison environment. We cannot agree that the State's use of Hanson's misconduct report damaged Russell's credibility to his detriment. Nor can we find that Hanson was prejudiced by the failure to provide the misconduct report. Dr. Russell's testimony of her risk assessment was offered to challenge the State's allegation that Hanson likely would commit future acts of violence and was a continuing threat to society. Hanson's jury evidently believed Dr. Russell because it rejected this aggravating circumstance during deliberations. Hanson has not shown under these circumstances that the outcome of his resentencing proceeding would have been different had counsel provided the report to shield Dr. Russell from impeachment.

¶ 37 Hanson also argues that trial counsel was ineffective for not calling Ahmad Henry to testify about Miller's statement that he shot the woman. He argues that Henry should have been called to repeat Miller's confession and to rebut Detective Nance's opinion that Henry was a liar. Prior to Detective Nance's testimony, the State sought to prevent defense counsel from questioning Nance about Henry's conversation with Miller because it was hearsay within hearsay. Defense counsel argued that he should be allowed to question Detective Nance about Henry's conversation with Miller rather than calling Henry himself, stating in support that he did not know whether Henry would invoke his Fifth Amendment privilege if called to testify and argued that the testimony was admissible through Nance under 12 O.S.2001, § 2805 providing for the admission of hearsay within hearsay under certain circumstances. Defense counsel felt

calling Henry was risky; he stated, "there's no telling what he'll do. He's a long-time crook and known for getting funny notions." Introducing Henry's statement through Detective Nance allowed the defense to introduce evidence of Miller's statement to Henry without Henry being subject to cross-examination. Arguably this was the best of all possibilities for Hanson since Henry had credibility problems and was known for being unreliable. Defense counsel made a sound strategy decision not to call Henry and we will not second guess it. *See Harris,* 2007 OK CR 28, ¶ 39, 164 P.3d at 1118.

¶ 38 Hanson complains that trial counsel failed to fully preserve the alleged Confrontation Clause violations discussed in Section II, *supra.* He claims trial counsel should have argued that his opportunity to cross-examine Barnes at Hanson's first trial was also inadequate because he did not have the benefit of Victor Miller's testimony from Miller's own trial in 2002 to use as impeachment. Again, the requirements for admission of testimonial hearsay set forth in *Crawford* were met in this case and the trial court did not err in admitting Barnes's prior recorded testimony through a transcript. Defense counsel's decision against presenting evidence of Miller's trial testimony appears reasonable and strategic. We will inquire no further.

■ ¶ 39 Nor can Hanson prevail on his claim that counsel was ineffective for failing to object to the comments raised in his prosecutorial misconduct claim. Reviewing these comments, we have found that Hanson was not prejudiced by any of them. Clearly then, he cannot show that the outcome of his resentencing trial would have been different had counsel objected.

■ ¶ 40 Finally, Hanson complains that trial counsel failed to adequately investigate and present available mitigating evidence. With this claim, Hanson has filed an application for an evidentiary hearing under Rule 3.11, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2008). He attaches thirteen affidavits in support from family members and friends attesting he or she would have been willing to testify

that Hanson was a good son, father, brother and friend, that he was a caring and kind person, that he was a loyal and benevolent friend, that he was supportive and took an interest not only in the life of his own son but in the lives of the children of his family and friends, that he was respectful and that each affiant felt deep affection for him. During the sentencing portion of his trial, Hanson presented evidence that he was a kind person, a good friend, and a devoted father who was, in turn, deeply valued by those who knew him well. Dr. Russell presented Hanson's family and social history. The jury also heard from Hanson's long time girlfriend and mother of his son, the eleven year old son, and his girlfriend's brother and niece with whom Hanson had been close.[14] In discussing his family history, Dr. Russell noted that Hanson's mother was so distraught over the case that she declined after two meetings to be further involved in her son's assessment. That testimony contradicts the mother's claim in her affidavit that she knew nothing of her son's resentencing trial. We cannot find a strong possibility that trial counsel was ineffective for failing to use these witnesses. Nor are we persuaded that presenting additional character evidence of the same type would have changed the outcome of the trial. Hanson's application for an evidentiary hearing is denied and his claim of ineffective assistance of counsel is rejected.

## VI. AGGRAVATING CIRCUMSTANCE: KNOWINGLY CREATING A GREAT RISK OF DEATH TO MORE THAN ONE PERSON

■ ¶ 41 Hanson argues the jury's finding of the aggravating circumstance that he knowingly created a great risk of death to more than one person is supported neither by the evidence nor by Oklahoma law. He maintains that no one was at a great risk of death when he killed Bowles because the victim Thurman had already been shot and was lying some distance away.

■ ¶ 42 When the sufficiency of the evidence supporting an aggravating circumstance is challenged on appeal, we review the

14. Hanson's relationship with his girlfriend ended before he began his crime spree with Miller.

evidence in the light most favorable to the state to determine whether any rational trier of fact could have found the facts necessary to support the aggravating circumstance beyond a reasonable doubt. *Hogan*, 2006 OK CR 19, ¶ 75, 139 P.3d at 933. "This aggravating circumstance is established by acts which create a great risk of death to another person in close proximity to the homicidal act in terms of time, location, and intent." *Harris v. State*, 2004 OK CR 1, ¶ 53, 84 P.3d 731, 751. We review the record for evidence that another person or persons were so near the victim at the time of the murder and consequently put in jeopardy of suffering real harm. *See Salazar v. State*, 1996 OK CR 25, ¶¶ 9–11, 919 P.2d 1120, 1123–24; *Allen v. State*, 1996 OK CR 9, ¶¶ 30–38, 923 P.2d 613, 620–21. In other words, we consider if another person was endangered by the defendant's actions in killing the victim. *See e.g., Harris*, 2004 OK CR 1, ¶¶ 53–54, 84 P.3d at 751 (great risk of death to another established where defendant fatally shot victim inside transmission shop with bystanders nearby and then shot and beat his spouse); *Young v. State*, 2000 OK CR 17, ¶ 73, 12 P.3d at 42 (great risk of death to another established where defendant fired gun inside restaurant in which at least nine people were present, killing one person and injuring another); *Snow v. State*, 1994 OK CR 39, ¶ 25, 876 P.2d 291, 297–98 (great risk of death to another established where defendant killed victim in private cubicle, and then attacked and stabbed a second person in the same cubicle moments later); *Stouffer v. State*, 1987 OK CR 92, ¶ 72, 738 P.2d 1349, 1361 (great risk of death to another established where defendant shot two people, one fatally, within view of each other albeit in different parts of the same house). *But see, Salazar*, 1996 OK CR 25, ¶¶ 11–12, 919 P.2d at 1125 (great risk of death not found where defendant burglarized inhabited family home at night where the defendant did not seek out inhabitants and had no contact with any person other than the child victim he stabbed in order to avoid contact with other sleeping family members); *Allen*, 1996 OK CR 9, ¶¶ 31–34, 923 P.2d at 620 (great risk of death not found where defendant shot wife on steps of daycare center at point blank range and the evidence did not show that bystanders were in the immediate vicinity).

¶ 43 The risk to another person necessary to support this aggravating circumstance does not exist under the unusual facts in this case. Hanson and Miller conspired to kidnap Bowles and steal her car to use in other robberies. According to Hanson, they drove her to the dirt pit intending to release her. Their plan changed when Thurman saw them. Miller killed Thurman to eliminate him as a witness and minutes later Hanson killed Bowles for the same reason. There is undoubtedly a connection between the two murders: but for the kidnapping of Bowles, Thurman would not have witnessed the crime and been murdered. Our case law, however, requires more. As we have so often said, "it is not the death of more than one person which supports [the aggravator], but the defendant's acts that create the risk of death to another which are in close proximity, in terms of time, location and intent to the act of killing itself." *Valdez*, 1995 OK CR 18, ¶ 69, 900 P.2d at 382 *quoting Snow*, 1994 OK CR 39, ¶ 24, 876 P.2d at 297. It was uncontested that Miller shot Thurman after Thurman saw them with Bowles. They drove to another location a short distance away and Hanson shot Bowles in the roadside ditch. At the time Hanson was engaged in the act of shooting Bowles, Thurman was not in jeopardy from that act.

¶ 44 We now consider what relief, if any, is required. The United States Supreme Court set forth the test to determine when a death sentence must be set aside if an aggravating circumstance is invalidated. "An invalidated sentencing factor ... will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process *unless* one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances." *Brown v. Sanders*, 546 U.S. 212, 220, 126 S.Ct. 884, 892, 163 L.Ed.2d 723 (2006). "If the jury could have properly considered the evidence used to support the invalidated aggravator anyway because it also supported a separate and valid aggravator, the death sentence will stand." *Jackson v. State*, 2006 OK

CR 45, ¶ 44, 146 P.3d 1149, 1164. Under such circumstances, the jury has not considered any improper evidence and has not weighed any improper aggravating evidence against the mitigating evidence in arriving at its sentence. *Id.*

¶ 45 All the evidence presented to this jury to support a finding that Hanson knowingly created a great risk of death to another person was properly admitted to support the separate and valid aggravating factor that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. The State presented evidence about Thurman's murder to show not only that Hanson endangered more than one person but to show that he killed Mary Bowles so his crime spree could continue and he could avoid responsibility for his prior criminal acts. Under the *Brown* test, Hanson's death sentence stands because his jury did not improperly consider improper aggravating evidence in deciding punishment.

¶ 46 Hanson also challenges the prosecutor's argument and the trial court's instructions related to the aggravating circumstance that he knowingly created a great risk of death to more than one person. We need not discuss these claims given our holding invalidating this aggravating circumstance other than to say that the argument and instructions did not render Hanson's resentencing trial unfair.

## VII. AGGRAVATING CIRCUMSTANCE: THE MURDER WAS COMMITTED FOR THE PURPOSE OF AVOIDING OR PREVENTING A LAWFUL ARREST OR PROSECUTION.

¶ 47 Hanson argues the State was constitutionally barred from alleging that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution at his resentencing trial. In Hanson's original trial and again at the resentencing trial, the State alleged that he killed Bowles to avoid arrest or prosecution. At Hanson's first trial, jurors did not find this aggravating circumstance. Hanson claims that this failure is equivalent to an acquittal, and that the State was barred from re-alleging this aggravating circumstance at his resentencing trial. Hanson admits that we have considered and rejected this argument in other cases. *See Harris,* 2007 OK CR 28, ¶ 13, 164 P.3d at 1110; *Hogan,* 2006 OK CR 19, ¶¶ 56–59, 139 P.3d at 928–30. We do not reconsider it here.

¶ 48 Hanson argues that this aggravator does not sufficiently narrow the class of murderers eligible for the death penalty and that it is applied in an overbroad and unconstitutional manner. We have repeatedly rejected this claim. *See Myers v. State,* 2006 OK CR 12, ¶ 89, 133 P.3d 312, 334, *cert. denied,* 549 U.S. 1120, 127 S.Ct. 939, 166 L.Ed.2d 719 (2007); *DeRosa v. State,* 2004 OK CR 19, ¶ 90, 89 P.3d 1124, 1154. We continue to find that the application of this aggravating circumstance is sufficiently limited by the requirements that: (a) a predicate crime existed, apart from the murder, from which the defendant sought to avoid arrest or prosecution; and (b) the State presented evidence that established the defendant's intent to kill to avoid arrest or prosecution. *Myers,* 2006 OK CR 12, ¶ 89, 133 P.3d at 334.

¶ 49 Hanson also claims that the evidence in support of this aggravator in his case was insufficient. We review the evidence of this aggravator for proof of a predicate crime, separate from the murder, that prompted the defendant to kill in order to avoid arrest or prosecution for the predicate crime. *See Lay v. State,* 2008 OK CR 7, ¶ 34, 179 P.3d 615, 624; *Lott v. State,* 2004 OK CR 27, ¶ 115, 98 P.3d 318, 348. The defendant's intent to kill to avoid arrest may be inferred from circumstantial evidence. *Lott,* 2004 OK CR 27, ¶ 116, 98 P.3d at 348. Hanson and Miller kidnapped Mary Bowles, stole her car and drove her to the dirt pit. Hanson told Barnes that they were going to let her go until Thurman saw them. Miller shot Thurman and instructed Hanson to kill Mary Bowles. From the evidence, a rational jury could find that Mary Bowles was killed because she witnessed Thurman's murder and that Hanson killed her to avoid a lawful arrest. The aggravator is supported by sufficient evidence.

## VIII. LACK OF INSTRUCTION ON MEANING OF LIFE WITHOUT PAROLE

¶ 50 Hanson argues the trial court's refusal to give his requested instruction defining life imprisonment without possibility of parole and his consequent parole ineligibility denied him a fair resentencing trial.

¶ 51 The sentencing options of death, life imprisonment without the possibility of parole and life imprisonment with the possibility of parole are self-explanatory. *See Littlejohn v. State*, 2004 OK CR 6, ¶ 8, 85 P.3d 287, 293. Hanson's jury asked no questions relating to the meaning of the sentencing options and he was allowed to argue that he would be ineligible for parole as a mitigating circumstance. Because Hanson's jury was instructed on the three statutory punishment options with their obvious distinctions, we find the court's instructions were sufficient to satisfy due process.

## IX. MITIGATING CIRCUMSTANCES INSTRUCTION

¶ 52 Hanson claims that the trial court's instruction defining mitigating circumstances, when considered with the prosecutors' closing arguments, improperly limited the jury's consideration of evidence presented in mitigation of the death sentence. The trial court gave the standard instructions on the definition and use of mitigating evidence. *See* OUJI–CR (2nd) Nos. 4–78 and 4–79.

¶ 53 In *Harris v. State*, 2007 OK CR 28, ¶ 25, 164 P.3d 1103, 1114, and again in *Malone v. State*, 2007 OK CR 34, ¶ 87 & n. 167, 168 P.3d 185, 219 & n. 167, this Court found that the instruction defining mitigating evidence used in Hanson's case did not prohibit jurors from considering mitigating evidence. The *Harris* court did find that it was error for the prosecutor to argue that jurors should not consider second stage evidence as mitigating, since it did not extenuate or reduce the defendant's guilt or moral culpabili-

ty.[15] *Harris*, 2007 OK CR 28, ¶ 25, 164 P.3d at 1114. A review of the prosecutor's closing argument concerning the mitigating evidence instruction and the mitigating evidence itself leads to our conclusion that the prosecutor did not unfairly limit the jurors' consideration of the evidence offered in mitigation in this case. *See Harris*, 2007 OK CR 28, ¶ 25, 164 P.3d at 1114. This proposition is denied.

## X. CUMULATIVE ERROR

¶ 54 In his final argument, Hanson claims that even if no single error in his case merits reversal, the cumulative effect of the errors committed during his resentencing trial necessitates modification of his death sentence.

¶ 55 The cumulative error doctrine applies when several errors occurred at the trial court level, but none alone warrants reversal. *DeRosa*, 2004 OK CR 19, ¶ 100, 89 P.3d at 1157. Although each error standing alone may be of insufficient gravity to warrant reversal, the combined effect of an accumulation of errors may require a new trial. *Id.* Cumulative error, however, does not deprive the defendant of a fair trial when the errors considered together do not affect the outcome of the proceeding.

¶ 56 We have reviewed Hanson's claims for relief and the record in this case and conclude that although his resentencing trial was not error free, any errors and irregularities, even when considered in the aggregate, do not require relief because they did not render his resentencing trial fundamentally unfair, taint the jury's verdict, or render his sentencing unreliable. Any errors were harmless beyond a reasonable doubt, individually and cumulatively.

## XI. MANDATORY SENTENCE REVIEW

¶ 57 Title 21 O.S.2001, § 701.13 requires this Court to determine "[w]hether the sen-

15. The *Harris* court noted a misuse of the instruction's language by prosecutors and referred the matter to the Oklahoma Uniform Jury Instruction Committee (Criminal) for an amendment to remedy the problem. *Harris*, 2007 OK CR 28, ¶¶ 26–27, 164 P.3d at 1114. The Court emphasized that the language of the uniform instruction itself was not legally inaccurate, inadequate, or unconstitutional. The uniform instruction defining mitigating evidence has been amended since Hanson's resentencing trial.

tence of death was imposed under the influence of passion, prejudice or any other arbitrary factor; and whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance." After conducting this review, this Court may order any corrective relief that is warranted or affirm the sentence. 21 O.S.2001, § 701.13(E).

¶ 58 Having reviewed the record in this case we find that Hanson's death sentence was not the result of trial error, prosecutorial misconduct, or improper evidence or witness testimony and that Hanson's death sentence was not imposed under the influence of any arbitrary factor, passion, or prejudice.

¶ 59 The jury's finding that Hanson had been previously convicted of a felony involving the use or threat of violence and that he murdered Bowles for the purpose of avoiding or preventing a lawful arrest or prosecution is· amply supported by the evidence. The evidence offered in support of the invalidated aggravating circumstance—that Hanson knowingly created a great risk of death to more than one person—was equally relevant to prove that he murdered Bowles to avoid arrest. Hanson's jury did not consider any improper aggravating evidence in deciding punishment. Weighing the valid aggravating circumstances and evidence against the mitigating evidence, we find, as did the jury below, that the aggravating circumstances outweigh the mitigating circumstances. The Judgment and Sentence of the district court is **AFFIRMED.**

C. JOHNSON, P.J., CHAPEL, and LEWIS, JJ.: concur.

LUMPKIN, J.: concur in part, dissent in part.

LUMPKIN, Judge: concur in part/dissent in part.

¶ 1 I concur in the results reached by the Court and find the sentence of death supported by the law and evidence.

¶ 2 I do disagree in the Court's decision to invalidate the aggravating circumstance that Appellant knowingly created a great risk of death to more than one person. The opinion uses the methodology of parsing the events into a time and space justification for invalidating the aggravator. This parsing disregards our caselaw that victims killed in the same manner, at the same place, and essentially the same time, presents "a classic example of the 'great risk of death' aggravating circumstance." *Dodd v. State,* 2004 OK CR 31, ¶¶ 106–107, 100 P.3d 1017, 1047–48. See also, *Eizember v. State,* 2007 OK CR 29, ¶ 123, 164 P.3d 208, 239.

¶ 3 The argument made by Appellant in this case could be made by any defendant charged with multiple homicides, i.e. no one was at risk when he killed the second, third or more victims because the first victim or subsequent victims were already dead. This is a factual decision to be made by the trier of fact. The jury in this case was properly instructed and there are facts in evidence to support their verdict. Therefore, we should honor that principle of law and their application of it in their decision and affirm the great risk of death aggravator. The opinion seeks to invalidate that decision by referring to language from cases where more than one person was not killed but those surviving were placed in a great risk of death situation, so that was the aggravator applied. See *Valdez v. State,* 1995 OK CR 18, ¶ 69, 900 P.2d 363, 382, quoting *Snow v. State,* 1994 OK CR 39, ¶ 24, 876 P.2d 291, 297. This reference ignores the fact that more than one person was actually killed in this case. Thus, the language from *Dodd, supra* should be applied and the aggravator applied.

¶ 4 Regardless of the fact I disagree with the invalidation of the aggravator that the Appellant knowingly created a great risk of death to more than one person, I have reviewed the evidence of the remaining aggravators, together with the evidence presented in mitigation, and find the sentence of death to be legally and factually supported. Therefore, I concur in the results reached by the Court.